THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BEVERLY BONNER, a/k/a Beverly Burks, a/k/a Beverly Upshaw, Defendant-Appellant.

First District (5th Division)   No. 77-115

Opinion filed December 2, 1977.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Barry Boren, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of public aid fraud in violation of section 11—21 of the Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, par. 11—21) and was sentenced to 90 days in the House of Corrections. On appeal she contends (1) she cannot be convicted of failing to notify the Illinois Department of Public Aid (Department) that she was employed, because it employed her; (2) a fatal variance exists between the charge in the complaint and the proof adduced at trial, and (3) the court abused its discretion in denying her probation.

The complaint stated that defendant:

"On or about February 15, 1974, to on or about February 24, 1975, at Chicago, Illinois, committed the offense of Public Aid Fraud in that she failed to notify the Illinois Department of Public Aid and the Cook County Department of Public Aid of a change in her

status as required by Sections 11—18 and 11—19 of Chapter 23, Ill. Rev. Stat., for the purpose of preventing the denial, cancellation or suspension of her public aid grant, to wit she failed to notify the Illinois Department of Public Aid that she had become employed in violation of Chapter 23, Section 11—21. Illinois Revised Statutes."

The parties stipulated that the complaint would serve as the bill of particulars. Thereafter, at a trial held on August 13, 1976, the following pertinent evidence was adduced.

*For the State*

*Corbell Turner Johnson*

She is a case auditor for the Department. When defendant originally applied for public aid on May 29, 1967, she conducted the interview. During this interview, she informed defendant of her obligation to report all changes in her circumstances.

*Janice Patten and Terri Messindens*

They are caseworkers for the Department. While assigned to the Jane Adams District Office, they conducted redeterminations of defendant's eligibility for public aid on October 1, 1974, and March 28, 1975, respectively. The interviews took place in defendant's home. During these visits, they asked defendant a number of questions regarding changes in her eligibility. They recorded defendant's responses on Department forms, which the State introduced into evidence. These forms indicate that on both occasions defendant stated that she had not received social security, money from employment, or lived with anyone other than her two children during the preceding three months. In addition, Terri Messindens testified that defendant failed to inform her that she was married.

*Joyce Irwin*

For the past two years she has been a financial clerk for the Austin District Office of the Department. She has known defendant for four to five years. Defendant was also employed at the Austin Office as a full time financial clerk. Prior to that they worked at "The Nursing Home Service" and the "Treasury." She "stood up" at defendant's wedding to Mr. Upshaw in January or February of 1975.

*Larry Adkinson*

From November 1974 until January 1976 he was a caseworker for the Department. His caseload consisted only of employees of the Department, who because of their low income, were entitled to income supplements.

On January 14, 1975, defendant applied for public aid using the name Beverly Burks. He interviewed her and recorded her answers on an

414

application form, which the State introduced into evidence. According to this form, defendant told him that she was employed by the Department from March 1971 to January 14, 1975. She also stated that she had not received public assistance of any kind during the preceding two years.

The State introduced certified copies of public assistance checks made out to Beverly Bonner, covering the period February 1, 1974, to February 3, 1975, and Department salary warrants made out to Beverly J. Burks covering the period February 22, 1974, to February 24, 1975. The assistance checks totalled $3,201.00 and the salary warrants, $3,932.62. It also introduced certified extracts from the records of the U. S. Department of Health, Education and Welfare, indicating that from February 1, 1974, to March 1, 1975, defendant as widow of Hollis Burks and mother of his stepchildren, received $1,718.30 in social security. Finally, it introduced a certified copy of defendant's marriage certificate showing she married Hollis J. Burks on November 28, 1970.

At the conclusion of the State's case, defendant brought a motion for a directed verdict arguing that a variance existed between the charge in the complaint and the proof adduced at trial. The court denied defendant's motion.

*For the defense*
*Leona Levin*
She is a district office supervisor at The Nursing Home Service of the Department. On December 18, 1974 she received defendant's request for sick leave. Defendant introduced this request into evidence. Although the disability certificate from defendant's doctor was made out in the name of Beverly Bonner, the request to which the certificate was attached was made out in the name of Beverly Burks.

*Adelyn Anderson*
She is employed by the Department in the medical service eligibility unit. Her office maintains an index card containing the name, address, birthday and case number of each public assistance recipient in Cook County.

On cross-examination, she acknowledged that there are at least 150,000 welfare recipients in Cook County.

*Dorothy Peterkin*
She is the custodian of the personnel files for the Department. She identified defendant's application of employment dated March 23, 1971. It was made out in the name of Beverly Burks. However, in it defendant listed her maiden name as Beverly Bonner. She also identified a request for leave of absence dated October 10, 1972. Again, although the disability certificate was made out in the name of Beverly Bonner, the request was filed in the name of Beverly Burks.

Following closing arguments the court found defendant guilty. After a hearing in aggravation and mitigation it sentenced her to 90 days in the House of Corrections.

## OPINION

■■ Defendant contends that she cannot be convicted on the basis of her failure to inform the Department that she was employed by it. She asserts, citing *Goldberg v. Kickapoo Prairie Broadcasting Co.* (8th Cir. 1961), 288 F.2d 778, that the knowledge of an agent acquired in the course of his duties is imputed to his principal. Because defendant's application for employment as well as her requests for leaves of absence contained both her married name (Burks) and her maiden name (Bonner), she argues that the Department is imputed with the knowledge that they are the same person. Consequently, the Department knew that Beverly Bonner also known as Beverly Burks was employed by it, and therefore, there was no need to inform it of this fact.

Section 11—18 and 11—19 of the Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, pars. 11—18, 11—19) affirmatively place the obligation to report all changes in circumstances on "every" public aid recipient. Neither statute makes any exception for Department employees, and we think for good reason. As Anderson testified there are at least 150,000 welfare recipients in Cook County. Cross-checking these recipients with Department employees would put an onerous and unnecessary burden on the State. When defendant here initially applied for public aid, Johnson warned her that she would be required to report changes in her status to the Department. Despite this admonishment and in clear contravention of sections 11—18 and 11—19, she did not and may, therefore, be held accountable for this failure.

■■ Defendant next contends that a fatal variance exists between the charge in the complaint and the proof adduced at trial. The complaint charges that defendant failed to notify the Department of her change in status "for the purpose of preventing the denial, cancellation or suspension of her public aid grant." Although the State concedes that even if the Department had considered defendant's employment in evaluating her eligibility, her benefits would not have been cancelled, but rather only reduced, it points out that section 11—21 (Ill. Rev. Stat. 1973, ch. 3, par. 11—21) provides that "failure to notify the county department * * * of a change in * * * status * * * for the purpose of preventing * * * [a] variation * * *" is also illegal.

Defendant mistakenly relies on *People v. Johnson* (1975), 34 Ill. App. 3d 38, 339 N.E.2d 325. There, defendant was charged with *agreeing* to perform an act of deviate sexual conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 11—14(a)(2).) At trial, however, the arresting officer testified that

defendant only *offered* to perform the act, which is also prohibited by this statute. Based on this variance, we reversed defendant's conviction. However, the Illinois Supreme Court reversed our decision and affirmed the trial court stating "that a variance, to require reversal, must be material and of such a character as to mislead the accused in making his defense * * *." *People v. Johnson* (1976), 65 Ill. 2d 332, 337, 357 N.E.2d 1166, 1168.

Here, although the existence of a variance is clear, as in *Johnson*, it is not fatal. Certainly the variance is not material, the gist of the charge in the complaint and the proof adduced at trial being the same—that defendant failed to notify the Department of changes in her circumstances in order to obtain undeserved aid. Defendant, nonetheless, asserted at oral argument that the variance misled her in making her defense. She argues that had she known that the variance was not fatal, she would have mounted a more aggressive defense, possibly even testifying herself. Instead, she claims she relied on the variance as grounds for a dismissal, putting on little if any defense.

We disagree. Defendant moved for a directed verdict on the basis of a fatal variance at the close of the State's case. The court denied the motion prior to defendant putting on her defense. Consequently, defendant knew prior to calling any witnesses that she could not rely upon the variance as being dispositive of the case.

Finally, defendant contends that the court abused its discretion when it denied her probation and sentenced her to 90 days in the House of Corrections. She asserts that the trial court disregarded the particular circumstances of this case in contravention of section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1) and instead based her sentence on its concern over the effect of welfare fraud on the financial condition of the State. In mitigation, she points out that she is the mother of two children ages two and ten, has joined a church, and has begun college in hopes of becoming a legal secretary. When these factors are considered in light of her previously clean record and the relatively small amount of money she received, defendant argues that she is an excellent candidate for probation.

Although this court has the power to reduce a sentence (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) our supreme court has indicated that this power should be exercised with considerable caution. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) Contrary to defendant's assertion we find nothing in this record to indicate that in sentencing her the court disregarded the particular circumstances of this case. The trial judge who ordinarily is in a better position to consider these matters than the reviewing court (*People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385) was fully informed of all mitigating factors defendant now raises.

Although the court in sentencing defendant referred to the limited resources of government and stated that in defrauding the State defendant was "actually preventing other people who were more needy than she from receiving funds which they desperately need," these remarks were obviously made to underscore the seriousness of defendant's conduct. Section 5—6—1(a)(3) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1(a)(3)) allows the court to impose a sentence of imprisonment "if having due regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opinion that: * * * (3) probation or conditional discharge would deprecate seriousness of the offender's conduct * * *." Defendant's sentence conforms with these guidelines.

■■ Notwithstanding the mitigating factors here, defendant, herself an employee of the Welfare Department, not only failed to report, but deliberately lied about changes in her circumstances with the intent to defraud the government of funds. Given the nature and circumstances of the offense, we see no reason to reduce the carefully considered sentence imposed by the trial judge.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.