THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK McGEE (Impleaded), Defendant-Appellant.

First District (4th Division)   No. 77-1080

Opinion filed April 26, 1979.—Rehearing denied June 28, 1979.

Howard T. Savage, of Chicago (Howard O. Edmonds, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James J. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

On September 18, 1974, the Cook County grand jury indicted Frank McGee, the defendant, and Lucian Holman for delivery of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)(1)), possession of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)(1)), and calculated criminal drug conspiracy (Ill. Rev. Stat. 1973, ch. 56½, par. 1405(a)). Prior to defendant McGee's trial, Lucian Holman pleaded guilty to possession of a controlled substance and was sentenced from 4 to 6 years in the Illinois State Penitentiary. Defendant was tried September 21, 1976, in the circuit court of Cook County before the Honorable Louis A. Wexler. Judge Wexler granted defendant's motion for a directed verdict on the calculated criminal drug conspiracy count after presentation of the State's case. The jury found him guilty of delivery of a controlled substance and not guilty of possession of a controlled substance. On November 9, 1976, Judge Wexler denied defendant's post-trial motions for arrest of judgment, to vacate and set aside the verdict, and for a new trial. After a hearing in aggravation and mitigation, the trial court sentenced defendant to serve 4 to 12 years in the Illinois State Penitentiary. This appeal is from his conviction as well as the sentence he received.

Jerome Johnson, a special agent assigned to the narcotics section of the Illinois Bureau of Investigation (I.B.I.), testified as the State's chief witness. He related that on January 17, 1974, at 12:14 in the afternoon, he and a confidential source, or informer, Johnnie West (a/k/a Lonnie Branch; hereinafter Branch), went to defendant's home at 5418 West Flournoy in Chicago to complete a drug transaction. They remained there until about 3 a.m. on January 18. They were admitted into the house by Lucian Holman who introduced them to defendant. Agent Johnson first stated that he unzipped and handed a black brief case containing $6500 in

prerecorded funds to Holman, but then corrected himself to say that he handed the money to defendant, who in turn handed it to Holman and told him to count it. After counting the money, Holman told Johnson he would return in one hour with the heroin. He left the house and did not return until 3 the next morning with a woman.

Defendant invited Holman, Branch and Johnson to the basement. Once they were in the basement, defendant instructed Holman to go behind the bar and bring out a silver tray and sifter. Holman did so and then removed a package from his pocket and unwrapped it. Johnson commented that the package did not look like it contained 4 ounces. Defendant disagreed and took a small portion of the substance from the package, put it in the sifter above the tray and used a spoon to crush it, telling Johnson to process the heroin in this manner. Defendant then asked Holman to rewrap the package and give it to Johnson.

Johnson and Branch left defendant's house at approximately 3:10 a.m. and drove to the Chicago I.B.I. office. He performed a field test on the substance and found it contained opianus.

Agent Johnson said he saw Branch after the transaction in question but did not know his whereabouts at the time of trial.

Steven Torres, a special agent for the I.B.I. narcotics division, testified that he was assigned to the surveillance of defendant's house on the dates in question. His surveillance of the house began at 12:04 p.m. At 12:15 p.m., Agent Johnson and Branch arrived at defendant's house. Holman left 20 minutes later. Torres continued his surveillance until 2:30 the next morning, taking a break from 11:50 p.m. to 12:30 a.m. During the time he watched the house, he saw at least three other people enter the defendant's residence.

Louis Nixon testified that he was a special agent assigned to the intelligence and narcotics division of the I.B.I. He stated that during his surveillance on January 18, 1974, between 2:40 and 2:45 a.m., he observed a grey car pull up in front of defendant's house. Two individuals left the car and entered the house. About 30 minutes later, Agent Johnson and Branch drove away in a car.

Allen B. Clark, a forensic chemist with the United States Justice Department, testified as the State's final witness. He stated that he performed a chemical analysis on laboratory exhibit No. 15932, which consisted of a manila block sealed envelope with four plastic bags. One of the plastic bags contained a brown powder weighing 93.5 grams. His findings indicated that 13.2 per cent, or 12.3 grams, of the 93.5 grams of the brown powder was heroin. He noted, "The sample in question was definitely heroin."

Lucian Holman was the first witness for the defense. He said he knew Branch and saw him at defendant's house on January 17, 1974. According

to Holman, defendant was not present when the conversation occurred in the living room regarding the purchase of the narcotics. Branch gave Holman $6500 to purchase some heroin. Holman took the money into the bedroom to count it. He and his girl friend, Geraldine Tolliver, left and returned with the heroin at 3 a.m. Branch, Johnson, Tolliver and Holman went to the basement. Holman said he took the heroin from Tolliver and gave it to Branch. Branch gave it to Johnson to examine. After expressing an objection about the heroin, Johnson inspected it in a pan and accepted it. Holman cleaned up the basement and left the house with Tolliver.

Fred Davis, a friend of defendant since 1970 or 1971, testified that he arrived at defendant's house on the night in question at 6:30 or 7 p.m. Davis knew Branch prior to January 1974 and had played cards at the McGee home a few times. Branch introduced him to Agent Johnson. That night, Davis stated he played cards from about 7:30 or 8 p.m. until 5 a.m. with Dexter Wilson, Jim Douglas, Rose McGee (defendant's wife) and Willean Hachett. During the evening, Branch slept on the couch, Johnson sat in the dining room, and defendant was in the bedroom. Davis saw Holman and Tolliver enter the house after 2 a.m. and walk through the dining room with Branch and Johnson. He saw Branch and Johnson walk back through the room and leave the house, but did not see Holman and Tolliver again that evening.

Davis said that after defendant's arrest, defendant's wife called him and related details about the incident to refresh his memory.

Willean Hachett, a friend of defendant for 10 years, testified to substantially the same facts as did Davis. She played cards at the McGee home on January 17, 1974. She saw Holman and a woman enter the house at about 3 a.m. and go to the basement with Branch and Johnson where they remained for about 10 or 15 minutes. Defendant retired to his bedroom at about midnight or 1 a.m. She did not see him leave the bedroom. Defendant's wife called her about 9 months after the night in question; she said that defendant was involved in a narcotics case and she called to discuss the events of the night and to refresh her recollection.

Finally, Rose McGee testified that on January 17, 1974, she got home from work at about 6:10 p.m. Upon her arrival, she saw Branch and Johnson. She called Fred Davis, James Douglas, Dexter Wilson and Willean Hachett at 6:30 p.m. to come play cards. During the evening, Lonnie Branch watched part of the game and said he would participate later, but slept on the couch most of the time. Johnson sat in the living room and at one point pulled back the curtain to look out the window. She did not say anything to him about his actions since he was a guest in her home. Her husband went to bed about 1:30 or 2 a.m. About 10 minutes later, she took food to him and closed the door of his bedroom. Defendant did not leave his bedroom. The card game lasted until 5:30 or

6 a.m. At about 2:30 or 3 a.m., Holman and a lady entered her home. The two, along with Branch and Johnson, went to the basement. After her husband was arrested, she obtained bail, discussed the incident with him, and telephoned her friends to refresh their recollections of the evening.

Lonnie Branch did not testify at defendant's trial. Defense counsel filed several unsuccessful motions prior to trial in an effort to compel the production of Branch to testify as a material witness. On April 23, 1975, defense counsel filed a motion requesting the name and address of any informant who was a participant in the transaction of January 17, 1974. The State's Attorney supplied the participant's name and address as Lonnie Branch, c/o Federal Correctional Institution, Texarkana, Texas. On October 17, 1975, defense counsel filed a petition for production of the material witness, alleging that defendants Holman and McGee could not receive a fair trial. In addition, the petition stated that defendants believed Branch would give favorable testimony to them; that Branch had been seen in Chicago, and law enforcement officers of the State of Illinois knew of his true whereabouts. The petition added that Branch could be made available by the State and he was either being concealed by the State or kept without the jurisdiction of the court by the State. The defendants urged that State action was depriving them of constitutional due process of law to meet witnesses face to face and have process to compel attendance in their behalf.

On December 9, 1975, Judge Marvin Aspen signed an order requiring the United States Marshall to produce Lonnie Branch for a hearing on January 5, 1976. On December 30, 1975, Branch was interviewed by defense counsel at the United States Attorney's office in Chicago. Judge Aspen signed an order on January 6, 1976, directing the United States Attorney to produce Lonnie Branch on April 12, 1976. On March 22, 1976, Judge James Murray granted a petition for writ of *habeas corpus ad testificandum* requesting the United States Marshall to produce Lonnie Branch for a hearing on April 12, 1976. On September 10, 1976, defense counsel filed a second motion to dismiss the indictment for failure to produce a material witness or, in the alternative, for a continuance pending the production of the material witness. The motion for a continuance was denied on September 21, 1976. The trial court found that the State had exercised diligence in trying to locate Branch.

The trial court signed an order on September 22, 1976, that a rule to show cause be issued to the warden of the Federal correction center in Chicago for failure to respond to the *subpoena duces tecum* pertaining to records of Branch's incarceration. On September 23, 1976, a representative of the warden of the Federal correctional facility appeared in court and stated that in the long run the request to produce Branch's records would probably be denied by the United States Justice Department

because Branch was a person whom the Federal Government was trying to shield. He had been an informant on numerous Federal cases. His life had been threatened and it was feared that revelation of his identity and place of business would result in harm or death to him.

The issues on appeal are (1) whether the variance between the indictment and the proof at trial amounts to reversible error; (2) whether defendant has been proved guilty beyond a reasonable doubt of delivery of heroin; and (3) whether the trial court committed reversible error in allowing the trial to proceed without compelling the production of the informant to testify.

Defendant McGee contends that his conviction of delivery of a controlled substance should be reversed because there was a discrepancy between the amount of heroin allegedly delivered in the indictment and the proof adduced at trial. Section 401(a)(1) of the Controlled Substance Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)(1)) provides that delivery of "30 grams or more of a substance containing heroin" amounts to a Class 1 felony. The indictment from which the defendant was convicted alleges that defendant delivered "a quantity of more than 30 grams of a certain controlled substance, to wit: heroin." It is defendant's position that this discrepancy amounts to a fatal variance and requires reversal of his conviction since the evidence presented at trial established that the substance delivered only contained 12.3 grams of heroin.

The State contends that although a variance exists, it is not fatal and does not require reversal of defendant's conviction, and we agree.

■■ The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 111—3) requires that an indictment set forth the nature and elements of the offense charged. To be fatally defective, the variance must be material and of such character as to mislead the accused in making his defense (*People v. Bonner* (1977), 55 Ill. App. 3d 411, 416, 371 N.E.2d 78, 81) or expose him to double jeopardy (*People v. Johnson* (1976), 65 Ill. 2d 332, 337, 357 N.E.2d 1166, 1168).

■■ We cannot say that the variance in defendant's case in any way misled him in making his defense. Defendant's defense was that he did not deliver the heroin. Therefore, it is irrelevant to his defense how much heroin was proved to have been delivered at trial compared with the amount that was allegedly delivered in the indictment.

■■ Nor can we say that the variance exposed defendant to double jeopardy. Here, the question is whether the indictment states sufficient elements to bar future prosecution arising out of the same conduct. (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.) We believe it does. The indictment states the date of the commission of the offense and substantially describes the offense, which is sufficient to plead

in bar of a future prosecution. We hold, therefore, that the variance in the indictment and the proof adduced at trial does not require reversal of defendant's case.

The next issue is whether defendant has been proved guilty beyond a reasonable doubt. It is defendant's main contention that he was not proved guilty beyond a reasonable doubt because Agent Johnson's testimony did not support the conviction.

The State contends that Agent Johnson's testimony was sufficient evidence on which a jury could base a verdict, and we agree.

Without restating the entire testimony, Agent Johnson testified, substantially, that he went to defendant's house, accompanied by an informant, Lonnie Branch, to complete a drug transaction. He tendered to defendant a brief case containing $6500 for the purchase of some heroin. Defendant then handed the brief case to Lucian Holman who counted it and left to secure the heroin. When Holman returned, defendant asked Holman, Branch and Johnson down to the basement. In the basement, defendant took a small portion of the heroin and demonstrated the contents of the substance by crushing it in a sifter above a tray. Holman rewrapped the package and handed it to Johnson.

The witnesses for the defense testified that defendant was not present in the basement when the heroin was delivered to Agent Johnson. Lucian Holman testified that the three people who went with him to the basement were Branch, Johnson and Tolliver. Two other witnesses testified that defendant went to his bedroom between midnight and 2 a.m. Both Davis and Hachett testified that after defendant was arrested defendant's wife called them to discuss the incident and refresh their recollections of the incident.

■■ The testimony of a single witness when positive and credible is sufficient to support a conviction, even though the accused has contradicted the testimony. (*People v. Horobecki* (1977), 48 Ill. App. 3d 598, 601-02, 363 N.E.2d 1, 3; *People v. Miller* (1971) 2 Ill. App. 3d 206, 210, 276 N.E.2d 395, 398.) While the trier of fact may not disregard alibi testimony (*Horobecki*, 48 Ill. App. 3d 598, 602), the trier of fact is not obligated to believe alibi testimony even if given by a greater number of witnesses (*People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462, 464).

■■ Defendant challenges Agent Johnson's credibility in that he first stated that he gave the brief case to Holman, but then stated he first gave the brief case to defendant who in turn gave it to Holman. Where there is any conflict as to material facts in issue, it is the duty of the trier of fact to determine the credibility of the witness and the weight to be given that testimony. This court will not substitute its judgment for that of the trial court. (*People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96, 98;

*People v. Aponte* (1977), 45 Ill. App. 3d 1030, 1036-37, 360 N.E.2d 424, 429.) Further, "[A] reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused." (*People v. Springs* (1972), 51 Ill. 2d 418, 427, 283 N.E.2d 225, 230.) The evidence here establishes a completed delivery of heroin to an I.B.I. agent whom the jury chose to believe over the defendant's four witnesses. After reviewing the record, we cannot say that the evidence gives cause for reversal. We hold, therefore, that defendant was proved guilty beyond a reasonable doubt of delivery of heroin.

■■ Lastly, we must consider whether the trial court committed reversible error in allowing the trial to proceed without compelling the production of the informant to testify. Defendant's attorney filed numerous unsuccessful motions in an attempt to compel the production of Branch by the State's Attorney. This court has held that where the testimony of a witness would have been merely corroborative or cumulative, defendant is not prejudiced by the failure of the witness to testify. (*People v. Brown* (1976), 41 Ill. App. 3d 641, 648-49, 354 N.E.2d 602, 609.) Defendant's attorney interviewed Branch at the United States Attorney's office in Chicago. The defendant's assertion on appeal is that the testimony of Branch would have been corroborative of the testimony of defendant's witnesses. In that case, Branch's testimony would have been merely cumulative. Therefore, whereas it may have been error for the trial court to proceed without compelling the attendance of the informer, it was not reversible error, and we so hold.

The defendant raises other issues which we have considered and find to be without merit. The purpose of our review is not to determine whether the record is perfect, but whether defendant received a fair trial under the law and whether his conviction is based upon evidence which established his guilt beyond a reasonable doubt. *People v. Jiles* (1973), 13 Ill. App. 3d 245, 250, 300 N.E.2d 803, 807.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.