THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOM KAPPAS, a/k/a Athanasios Kapogiannis, Defendant-Appellant.

Fourth District   No. 4—83—0245

Opinion filed December 15, 1983.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE MILLS delivered the opinion of the court:

Blood alcohol concentration of .11%.

Guilty—one year probation.

We affirm.

Kappas was tried to a jury on charges of improper lane usage, bribery, driving while license suspended, illegal transportation of alcohol, driving under the influence of alcohol, and driving while his blood alcohol concentration was at or in excess of .10%.

He was found not guilty of improper lane usage, bribery, and driving under the influence of alcohol, but guilty of driving while his license was suspended (90 days), illegal transportation of alcohol ($100 fine), and driving while his blood alcohol concentration was at or in excess of .10% (one year probation).

Kappas appeals his conviction of driving while his blood alcohol concentration was at or in excess of .10%.

## I. THE FACTS

On the evening of November 29, 1982, Kappas was stopped by Pontiac, Illinois, Police Officer Ores. The officer had observed the car driven by Kappas swerving from lane to lane as it approached an entry ramp onto Interstate 55. Prior to stopping defendant, Ores called for backup help. Illinois State Trooper Case and Pontaic Police Officer Bernardini responded to the call and all three were present when the stop was made. Officer Ores approached the defendant's car and detected the odor of alcohol. The defendant got out of his car and walked to the shoulder of the interstate where he performed various field sobriety tests. During the tests the defendant almost fell over backwards. Trooper Case found an open whiskey bottle and two open beer containers in the car. Officer Ores placed the defendant under arrest for driving under the influence of alcohol and asked the defend-

ant to take a breathalyzer test which would normally be done at the county jail. At this point Trooper Case said he was a qualified breathalyzer operator and was willing to administer the test at State police headquarters where there was a machine.

Kappas was taken to State police headquarters, arriving approximately 10 minutes after his arrest. At headquarters, three more physical tests were administered. He demonstrated impaired ability in the performance of all three tests. In Officer Ores' opinion, the defendant was intoxicated and unfit to drive.

A breathalyzer test was then administered by Trooper Case. Case plugged the machine in at 9:45 p.m. Case ran a test on the ambient air which registered .000% for alcohol. The defendant was tested at 10:06 p.m. The test results showed Kappas' blood alcohol percentage to be .11%.

The machine used to test Kappas had been inspected 10 days before. The test consisted of heating a 10% alcohol solution in order to force evaporation. Two readings were then taken. The first reading was .09% alcohol, the second reading .10% alcohol. Such results were within normal machine tolerances which are plus or minus .01% accuracy.

Kenneth Kurtz, a maintenance and certification officer of the Illinois State Police, testified that the machine measures blood alcohol at the time of testing and does not take into account variables such as height, weight, time or type of alcohol ingested. He further testified that there is no way to judge anyone's blood alcohol at any time prior to or after the actual administration of the test based solely on test results.

Kappas took the stand in his own behalf. He admitted drinking three beers but claimed that his girlfriend had left the open beer in his car. He denied ever crossing any traffic lines. He had no knowledge about where the whiskey bottle came from. He had been drunk on previous occasions and knew what it was like, but was not drunk on the evening of November 29.

The jury found defendant not guilty of driving under the influence in terms of physical impairment, but guilty of driving a car while his blood alcohol was at or in excess of .10% as measured by a breathalyzer.

## II. The Merits

Defendant appeals his conviction for driving a car based on a blood alcohol concentration (BA) of .11% measured 38 minutes after his arrest. His first argument on this point is that since the breathaly-

zer machine has a tolerance of plus or minus .01, there is no way to tell whether his blood alcohol at the time of testing was .10, or .11, or (he did not state this possibility) .12. While a finding of .10 would be sufficient to convict him under section 11—501(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)(1)), the information charging defendant with the crime reads "at a time when the alcohol concentration in his breath was *in excess of 0.10.*" (Emphasis added.) In the defendant's view, *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, requires the State to prove beyond a reasonable doubt the exact terms of the information as written.

We do not agree.

■ In *People v. McGee* (1979), 72 Ill. App. 3d 576, 391 N.E.2d 5, the defendant was indicted for delivery of more than 30 grams of heroin. The statute provided that it was a crime to deliver 30 or more grams of the substance. The court upheld the defendant's conviction noting that the defendant was obviously not misled when making his case since his defense was that he had not delivered the heroin at all. Similarly, the defendant here sought to prove at his trial that the breathalyzer result did not reflect his blood alcohol at the time he was driving as well as attempting to prove that the tolerances of the machine were such that a probable inference was that his blood alcohol was not in excess of .10. Under these circumstances it is apparent that he was in no way misled in terms of preparing his defense to the crime charged. Under the rationale of *McGee*, there was no reversible error pertaining to the relationship between the proof and the information. No error.

■ Defendant next argues that based on well-recognized scientific principles there is no assurance that his BA was the same at the time of driving as it was at the time that he was tested. The State responds first that the jury's verdict was proper based on the totality of the circumstances and second that by not proffering medical journals which he cites in his brief to the trial court, the defendant has waived their consideration by this court. The State's waiver argument does not appear well taken. Under cross-examination by defendant's attorney, the officer in charge of maintenance and certification of breathalyzers admitted that the machine only showed the BA of an examinee at the time of testing and that there was no way to judge a person's BA anytime prior to the test. An objection by the State prevented the defendant's attorney from going into the scientific principles behind this fact but the witness did indicate his knowledge of the "blood alcohol absorption curve" which would cause the apparent discrepancy. The issue was again raised in defendant's post-trial motion.

Errors at trial must be preserved either by objection at trial at the proper time or by the filing of a post-trial motion. (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.) Since this issue was broached at trial and raised in the post-trial motion, we may consider the effect of the blood alcohol absorption curve in deciding whether a 38-minute delay between arrest and test might render the jury's verdict improper as against the manifest weight of the evidence.

The blood alcohol absorption curve is derived by plotting the amount of alcohol which the body absorbs against the time it takes to do so. Until absorption is complete, the blood alcohol indicator rises continually. Therefore, a breathalyzer test administered immediately after ingestion of alcohol will show a lower BA than the same test taken somewhat later, even though the amount of alcohol consumed is exactly the same. In light of these principles, it is apparent that a breathalyzer test administered at any time other than on the scene of an arrest might likely yield different results than a test given later. The issue boils down to what degree a 38-minute wait should affect the inferences which a jury could reasonably draw from all the evidence in a case.

In *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931, this court upheld a conviction for violation of the same section of the Illinois Vehicle Code as is present here, based on defendant's appearance and behavior at the time of arrest and breathalyzer results of .20% obtained an hour after arrest. Defendant here attempts to characterize Malik's behavior as more indicative of intoxication than that exhibited in the instant case but the two cases are really quite similar. Malik's clothing was in disarray, the smell of alcohol was about him, his vehicle was being driven without headlights at night, and his balance was uncertain at all times. In the instant case, the defendant was stopped after police observed his car weaving out of his traffic lane. After stopping the defendant, the police officers detected the odor of alcohol. The police also found open containers of alcohol in his car. The defendant performed poorly when put through various field sobriety tests. At trial the defendant admitted having three beers before he began driving. Based on the totality of the circumstances, a jury could reasonably conclude that defendant's BA at the time he was driving was .10% or higher despite the potentially differing breathalyzer results which delay might cause.

In his brief, defendant quotes language from *People v. La-Plante* (1975), 81 Misc. 2d 34, 365 N.Y.S.2d 392, which indicates that the State must prove the defendant's actual BA reading at the time he was driving to convict him of the charges based on a specific BA

reading. We note that no other court in New York has come to a similar conclusion, and at least one court has specifically refused to follow *LaPlante* recognizing the "impossibility of administering the test concurrently with the operation of the vehicle." (See *People v. LaMontagne* (1977), 91 Misc. 2d 263, 397 N.Y.S.2d 872 (which allowed a two-hour delay).) Courts in other States also recognize that delay, if not inordinate or involving further consumption of alcohol, does not render breathalyzer test results nonprobative of BA at the time of driving. *Toms v. State* (1952), 52 Okla. Crim. App. 60, 239 P.2d 812, permitted a 2½-hour delay. (Accord, *Wimsatt v. State* (1957), 236 Ind. 286, 139 N.E.2d 903.) The best view in this area—and that which this court adopts—is that expressed in *State v. Gallant* (1967), 108 N.H. 72, 227 A.2d 597, which found that matters of delay between driving and testing are properly viewed as going to the *weight* of the breathalyzer test results, and as such must be viewed in light of the circumstances surrounding the arrest.

■ Since there was additional evidence which supports the finding that at the time he was driving defendant's BA was at or above the level proscribed by statute, the fact that there was a 38-minute period between the time he was observed driving and the time he was tested by a breathalyzer should not result in a jury's verdict being overturned. The import of a 38-minute delay is reduced further by the fact that police are *required* to wait 20 minutes following arrest to administer the test. This means that the nonstatutory delay was only 18 minutes from the time defendant was stopped. During this period the defendant's car was searched, he was asked to, and did perform (poorly), field sobriety tests, and was then transported to State police headquarters. Under these circumstances we find the delay slight and totally insufficient to render the breathalyzer results nonprobative. No error.

## III. THE STATUTE

The defendant urges the potential unconstitutionality of section 11—501(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)(1)) arguing basically that if God had intended that man not drive when his BA is .10% or greater, he would have given us breathalyzers instead of brains. The State responds "waived!" or (in the alternative) that the conduct prescribed by the statute may be ascertained through minimal cerebral exercises and as such the statute is constitutional.

■ The State argues that since the defendant failed to: (1) object when the charges against him were amended to include the offense of

driving with a BA of .10% or more; (2) file a motion to dismiss based on constitutional grounds; (3) object on constitutional grounds to the instructions defining the offense; and (4) raise the specific constitutional issues asserted here as part of his post-trial motion, he has now waived any objections based on the perceived unconstitutionality of the statute. The record discloses that the constitutional arguments raised here were specifically addressed by the defendant's post-trial motion which was denied by the trial court. The issue was, therefore, preserved for appeal.

Defendant contends that the statute under which he was convicted is unconstitutionally vague because there is no way for one to accurately determine when his BA reaches or exceeds .10%, so that it is impossible to properly comport oneself with the statute's proscriptions. The defendant trots out language from *Connally v. General Construction Co.* (1926), 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126, and *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, indicating that statutes which force people to guess at their meanings and differ as to their applications violate principles of due process.

Defendant's reliance on *Grayned* is curious if not misplaced. In *Grayned,* the court struck a Rockford, Illinois, antipicketing ordinance on equal protection grounds (not involved here) but sustained a city ordinance which proscribed " '*** wilfully *** making *** any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof ***.' " (408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298.) The appellant in *Grayned* had argued that the statute did not sufficiently specify the proscribed conduct but the court found otherwise. We find *Grayned* instructive but distinguishable. In the instant case, the argument is that while the proscribed conduct is manifestly clear, there is no reasonable way for an individual to determine whether his status at any given time actually violates the statutory proscription. Only a breathalyzer test would indicate to an individual whether his BA was beyond that allowed by the statute. The problem is aggravated by the facts that (1) there is no flat proscription against drinking and driving, and (2) that different individuals show different BA levels and different degrees of physical impairment based on the ingestion of the same amounts of liquor. Concerns such as these led one division of the California Court of Appeals to find unconstitutional an identical statute in that State. *People v. Alfaro* (1983), 143 Cal. App. 3d 528, 192 Cal. Rptr. 178 (advance sheet only).

A second division of the California Court of Appeals refused to

follow *Alfaro*. (See *People v. Galante* (1983), 143 Cal. App. 3d 709, 192 Cal. Rptr. 184.) *Galante* found that in the first place it is obvious that the terms defining the offense in conduct could not be more precise. Driving a motor vehicle when one's BA is .10% or more is against the law. The court viewed the fact that marginal cases may arise in which it is difficult for an individual to determine whether given behavior lies on the condoned side of the drawn line or the condemned side as insufficient to render the statute too vague for constitutional purposes.

■ Although we are convinced that one should ordinarily be expected to know that he has consumed enough alcohol to raise the BA to .10% or above, we feel that a point which was not briefed or argued more effectively disposes of this issue. In *People v. Teschner* (1979), 76 Ill. App. 3d 124, 394 N.E.2d 893, the court upheld section (a) of the act under attack against a constitutional attack based on the lack of a requisite mental state. The court found it to be well established that motor vehicle offenses do not pend on intent, motive or knowledge but on the doing of the act prohibited alone. The court found it appropriate for the legislature to create an *absolute liability* offense where the regulation of traffic was involved.

The strict liability nature of this offense bears directly on the defendant's argument that this section of the statute is vague since a person cannot determine when his BA exceeds .10%. It simply does not matter since the liability is absolute. Just as one may not argue that a stop sign which was violated was not seen by or known to the violator, so may not a person whose BA registers .10% or above on an appropriately calibrated breathalyzer argue that he did not know it was so.

The violation is in the doing, not the knowing. No error.

## IV. The Instructions

At trial, defendant tendered an instruction consisting of both paragraphs of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981). The State tendered the same instruction deleting the second paragraph. The judge refused the defendant's version of the instruction ruling that proof the defendant was driving, as well as defendant's admission that he was drinking prior to driving, constituted direct evidence of guilt. Defendant's view is that since the proof pertaining to his blood alcohol at the time of driving was circumstantially established by a breathalyzer test given some time later, the second paragraph of the instruction should have been given because the defendant's guilt was established wholly through circumstantial evi-

dence.

■ " '[D]riving' is an essential element of the offense of 'driving while intoxicated.' " (*People v. Wright* (1977), 49 Ill. App. 3d 356, 358, 364 N.E.2d 355, 356.) Since there was direct evidence that defendant was driving a car at the time he was arrested and just prior to taking a breathalyzer test, the State proved an essential element of the offense by direct evidence. Since the State proved an essential element of the offense by direct evidence, the State's case was not entirely circumstantial. As indicated in the Committee Note, the second paragraph of IPI Criminal No. 3.02 should be given only when the State's case is entirely circumstantial. Since the State's case was not entirely circumstantial, the trial court properly refused to give the second paragraph of the instruction. No error.

The defendant offered, and the court gave, an instruction on the presumptions which attached to various BA levels. The instruction is found at IPI Criminal No. 23.06 and was criticized by this court in *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931. The defendant now urges that it was error for the court to give the instruction. The State responds the defendant waived his objection to the instruction by tendering it. Defendant has not addressed the waiver argument.

■ "It is axiomatic that an accused cannot complain of error *** invited by him, and to this end *** a defendant may not complain of defects in instructions which were given at his request." (*People v. Riley* (1964), 31 Ill. 2d 490, 496, 202 N.E.2d 531, 534.) Under this controlling authority, defendant may not complain of the instructions in this case which were given at his behest. Further, by not arguing waiver of this point, the defendant has capitulated to the State's position that the point is waived. (87 Ill. 2d R. 341(e); *Walker v. Board of Police & Fire Commissioners* (1979), 77 Ill. App. 3d 958, 397 N.E.2d 2.) No error.

Affirmed.

TRAPP and WEBBER, JJ., concur.