567 So.2d 966 (1990)
Carl Andrew HAAS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1289.
District Court of Appeal of Florida, Fifth District.
September 27, 1990.
*967 James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca R. Wall, Asst. Atty. Gen., Daytona Beach, for appellee.

ON MOTION FOR REHEARING EN BANC
HARRIS, Judge.
In response to Appellant's motion for rehearing en banc, we have elected to consider this case en banc. Accordingly, we withdraw our prior affirmance without opinion and substitute therefore the following opinion. Carl Haas appeals his conviction and sentence for DUI manslaughter and driving under the influence causing serious bodily injury, both based on a jury finding that his blood alcohol level was at least 0.1 at the time of the accident. He contends that the trial judge erred in not granting his motion for judgment of acquital because there was no direct evidence to establish his blood alcohol level at the time of the accident. Because we think no such evidence is required, we affirm.
At about 10:00 o'clock on the evening of March 12, 1988, Haas was driving a pick-up truck on Highway 50 in Orange County, Florida. Although the highway at that point was a divided, four lane highway, Haas was driving west in the left, east bound lane. He was familiar with the area. He drove on the wrong side of the divided highway for approximately two miles, passing six median crossovers. At least one car approaching him swerved to get out of his way. Another driver blew his horn to get Haas' attention. Without any effort to avoid the impending collision, Haas ran head-on into a vehicle driven by Jennifer Trotter, killing her and injuring her four year old son, Kevin. At the scene of the accident, Haas smelled of alcohol and three cans of cold beer with one can open were found in a six pack inside the truck; two empty cans were found outside the truck. He was combative at the scene. His blood alcohol level measured 0.11 percent when his blood test was administered an hour and 20 minutes after the accident.
*968 Haas contends that the State, by failing to do a retrograde extrapolation of the blood alcohol test result back to the time of the accident, failed to negate his "reasonable hypotheses of innocence." But that is not the State's burden. In a circumstantial evidence case, as this is, the State is not required to rebut conclusively every possible version of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. State v. Law, 559 So.2d 187 (Fla. 1989); Naumowicz v. State, 562 So.2d 710 (Fla. 1st DCA 1990). Thus the question before us is whether the evidence of a blood alcohol level of 0.11 percent an hour and 20 minutes after the accident  either alone or in conjunction with other evidence of impairment  is sufficient to uphold the jury verdict that Haas' blood alcohol level was at least 0.10 at the time of the accident.
In State v. Miller, 555 So.2d 391 (Fla. 3d DCA 1989), the Third District held that the results of a blood alcohol test taken 1 and 1/2 hours after the defendant's last operation of a vehicle was admissible without retrograde extrapolation. This is because the clear and unambiguous terms of Section 316.1934(2), Florida Statutes (1987) makes the test admissible subject only to exceptions not relevant here. Miller held that although the timing of the blood alcohol level test may affect its accuracy, the question of timeliness is to be left to the trier of fact in each case. Once the test result is placed in evidence, a defendant may generally attack the accuracy of the test on any relevant ground.
In Naumowicz v. State, supra, the court permitted the admission of a BAL test result taken 1 and 1/2 hours after the accident even though a retrograde analysis showed that defendant's blood alcohol level might have been as low as 0.08 at the time of the accident. The evidence in that case was that the defendant had been drinking over a 5 hour period on a virtually empty stomach. She had participated in a game in which guzzling beer was required. She had a beer with her at the time of the accident and ran a stop sign at an intersection with which she was familiar. The Court held:
While retrograde analysis could place her blood alcohol level only within a 0.08 to 0.17 percent range at the time of the accident, the jury could reasonably infer from the totality of the evidence as outlined above, that Naumowicz's faculties were impaired because of the alcohol consumption at the time of the accident.
Although Naumowicz was tried on joint theories of impairment and unlawful blood alcohol level, the court upheld the test result on the basis of impairment without discussing the per se unlawful blood alcohol level theory.
Haas properly points out that Miller involves a charge of impairment  not unlawful blood alcohol level as this case does. And, as just indicated, Naumowicz only discusses the impairment issue. But does that really make a difference? Since the statute makes the BAL test result admissable in either case, is it not a question for the jury in either event?
While this is a case of first impression in Florida, it is certainly not a novel case in American jurisprudence.
In State v. Taylor, 132 N.H. 314, 566 A.2d 172 (1989), the New Hampshire Supreme Court reviewed a conviction for driving under the influence based on a blood alcohol level test result taken an hour and 15 minutes after operation of the motor vehicle without retrograde extrapolation.
In reviewing its statutory scheme (which is very similar to Florida's) the Taylor court determined that the State was not required to demonstrate a conclusive nexus between the test result and the defendant's blood alcohol content at the precise time he was driving in order for the test result to be admissible as prima facie evidence that the defendant was intoxicated while driving. The fact of the blood alcohol curve only goes to the weight of the evidence. The court held that to require retrograde *969 extrapolation would place an impossible burden on the State in that (1) the defendant would not be required to give the very information necessary to make the analysis, and (2) even if the information were available, individual characteristics would make a general rule unreliable. The legislature could not have intended such a result. Most notably, the Taylor court held that the result would be the same in an impairment case or in an unlawful blood alcohol level case.
A case remarkably similar to ours is People v. Kappas, 120 Ill. App.3d 123, 76 Ill. Dec. 1, 458 N.E.2d 140 (1983). In Kappas, the defendant was stopped after police observed his car weaving out of his traffic lane. After stopping the defendant, the officers detected the odor of alcohol and found open containers of alcohol in the defendant's car. The defendant failed field sobriety tests, was arrested, and was taken to the police station for a breathalyzer test. This test, taken 38 minutes after defendant's traffic stop, measured 0.11 percent.
On appeal defendant argued that there was no evidence that his blood level while he was driving was the same as when the test was administered. The court observed that the individual who had administered the test testified that he could not say that the defendant had a blood alcohol level of at least 0.1 at the time he was operating the vehicle. The court considered the effect of the blood alcohol absorption curve. This curve is derived by plotting the amount of alcohol which the body absorbs against the time it takes to do so. Until absorption is complete, the blood alcohol indicator rises continually. Therefore, a breathalyzer test administered immediately after ingestion of alcohol will show a lower blood alcohol level than the same test taken somewhat later even though the amount of alcohol consumed is exactly the same. The issue, then, is to what degree the delay in giving the test should affect the inference which a jury may draw from the test and all other evidence in the case.
Kappas adopted the view that the matter of delay between driving and testing are properly viewed as going to the weight of the test results and, as such, must be viewed in light of the circumstances surrounding the event.
In this case before us, while the substantial evidence of impairment does not point to any specific blood alcohol level, under the Kappas rationale, it would support the jury verdict that appellant's blood alcohol level was at least 0.1 at the time of the accident.
The issue before us was also considered by the Superior Court of Pennsylvania in Com. v. Slingerland, 358 Pa.Super. 531, 518 A.2d 266 (1986). Here the defendant was taken to the hospital after losing control of his motorcycle. When the investigating police officer detected the odor of alcohol, he requested a blood sample be taken. This sample, taken 1 hour and 23 minutes after the accident, disclosed a blood alcohol level of 0.13 percent. The court found that the evidence supported the defendant's conviction for driving with a blood alcohol content of 0.10 percent or greater, notwithstanding the lack of expert testimony relating the blood test result to the blood alcohol content at the time of driving. The court noted that the defendant had been drinking over the course of the entire evening, had not consumed a large quantity of alcohol immediately before operating his motorcycle, and admitted that while operating his motorcycle he had been able to feel the effect of the alcohol he had consumed. The blood test result, when considered in the light of the foregoing evidence, was sufficient to permit the jury to find that the defendant had operated his vehicle with an unlawful blood alcohol level. See Com. v. Speights, 353 Pa.Super. 258, 509 A.2d 1263 (1986) and Com. v. Boyd, 373 Pa.Super. 298, 541 A.2d 21 (1988).
In our case, while appellant made no admission that he felt the effect of alcohol, the evidence was overwhelming that he was substantially impaired at the time of the accident.
In Sullivan v. State, 517 N.E.2d 1251 (Ind. App. 1988), the defendant was convicted by a jury of driving with an unlawful blood alcohol level. The conviction was upheld even though the chemical test result *970 was not extrapolated back to the time of driving. The court held that the jury could consider all the circumstantial evidence presented and base its decision "on common sense and experience gained from everyday living."
In Livingston v. State, 537 N.E.2d 75 (Ind. App. 1989), the defendant was convicted by a jury of driving with an unlawful blood alcohol level. He measured 0.13 percent approximately 30 minutes after he was stopped for exceeding 80 miles per hour and was observed, at the time of the stop, to have bloodshot eyes, dilated pupils, and a strong odor of alcohol. The evidence presented to the jury was that it was medically possible for defendant's blood alcohol level to have been less than 0.1 percent at the time he was driving. Nevertheless, the court upheld the conviction stating that the evidence presented was more than sufficient to sustain the jury's finding.
Appellant correctly points out that Vermont requires that the State relate the blood alcohol content back to the time of the operation of the vehicle. State v. Rollins, 141 Vt. 105, 444 A.2d 884 (1982); State v. Dumont, 146 Vt. 252, 499 A.2d 787 (1985). So also does South Dakota. State v. Ladwig, 434 N.W.2d 594 (S.D. 1989). And also Arizona. Desmond v. Superior Court, 161 Ariz. 522, 779 P.2d 1261 (1989). We reject this minority view.
In State v. Ulrich, 17 Ohio App.3d 182, 478 N.E.2d 812 (1984), the Ohio court, in construing its statute, reversed a trial court determination that the State must produce "some type of expert testimony that will relate a test result back to the time of driving". Ulrich recognized that such requirement was consistent with Vermont law, rejected that position and held:
It is clear from the presence of this express language that the legislature intended the results of an intoxilyzer test to be admitted as evidence of the defendant's concentration of alcohol in his breath at the time of the defendant's alleged violation, provided that the intoxilyzer test was administered according to R.C. 4511.19(b). Accordingly, the gravamen of the offense (R.C. 4511.19[A][3]) is the operation of a vehicle within the state after ingestion of a sufficient amount of alcohol to produce an intoxilyzer test result which evidences an alcohol level prescribed by statute within two hours of the time that the alleged offense occurred.
This decision was based on a statute that permitted the court to accept as evidence of BAL at the time of the alleged violation the results of a chemical test taken within two hours of the offense. California's statutory scheme provides that the results of a test taken within three hours is "a rebuttable presumption" that such blood level was present at the time of the offense. California Vehicle Code, Section 23152(b) (West) (Supp. 1983).
In Minnesota, the law is that "the result of an evidentiary test administered within two hours of the alleged violation is deemed to be the alcohol concentration at the time of the violation." Minnesota Statutes Annotated, Section 169.121, Subd. 2 (Supp. 1983).
While Florida's provision is not so direct, it does provide the test results "... shall be admissable ..., and the amount of alcohol in the person's blood at the time alleged, as shown by chemical analysis of the person's blood ... shall give rise to the following presumption ..." (Emphasis added). § 316.1934(2) Fla. Stat. (1989).
Since the test must always be conducted after the alleged offense and since the statute does not require retrograde analysis, it appears that the legislature intended that the test results should be considered as the BAL at the time of the offense.
The Court of Appeal of Washington in State v. Bence, 29 Wash. App. 223, 627 P.2d 1343 (1981), in which a statute with the same general language as Florida's was involved, held that notwithstanding a theoretical possibility that a person who has an unlawful BAL when tested might have had a BAL less than that prohibited at the time of driving, the test result may nevertheless be considered as circumstantial evidence of an unlawful BAL at the time of driving.
In Nebraska v. Kubik, 235 Neb. 612, 456 N.W.2d 487 (1990), the breathalyzer result was 0.139 approximately 45 minutes after the stop. There was no evidence *971 offered to relate the blood alcohol level back to the time of driving. The Nebraska Supreme Court, after analyzing most of the preceding cases, upheld the conviction of a defendant for driving under the influence of alcohol under a statutory scheme similar to Florida's. The court concluded:
We hold that matters of delay between driving and testing are properly viewed as going to the weight of the breath test results, rather than the admissibility of the evidence. A valid breath test given within a reasonable time after the accused was stopped is probative of a violation of [their driving under the influence statute]. Emphasis added.
We adopt this rationale and affirm the conviction.
While the specific issue in this case may expand the certified question in Miller, nevertheless we join Miller, in certifying as a question of great public importance whether the BAL test result must be related back to the time of the offense in either an impairment or a UBAL case.
AFFIRMED.
DAUKSCH, COBB, W. SHARP, COWART, GOSHORN, PETERSON and GRIFFIN, JJ., concur.