THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE CHAMBERS, Defendant-Appellant.

(No. 71-242;

Second District—November 14, 1972.

Ralph Ruebner, of Defender Project, of Elgin, (Matthew J. Moran, of counsel,) for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, (Edward N. Morris, of counsel,) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of both reckless homicide and driving while under the influence of intoxicating liquor, after a jury trial. He was placed on probation for 4 years, the first 8 months to be served in the county jail.

He appeals, alleging that the evidence was insufficient to prove him guilty of either offense beyond a reasonable doubt; and that the State failed to prove a particular matter relied upon as reckless ("improperly overtaking another vehicle on the left"), claiming this was a material allegation of the indictment for reckless homicide. He further argues that the court erred in denying leave to file a written motion challenging the array.

On December 23, 1969, at approximately 10:30 P.M., Elise Parras, age 1, was killed when the defendant's car, which had been traveling south on Sheridan Road in North Chicago, struck the northbound vehicle in which she was riding, head-on. It was snowing heavily that evening, the snow was blowing, and the road was icy and snow covered.

The testimony for the State included that of Gerald Pedrin, a patrolman for the North Chicago Police Department. He testified that "there were probably" only three lanes open and driveable that night, because of snow on either side of Sheridan Road. He stated that he was standing on the east side of the street at the corner of 13th and Sheridan when he heard a crash, looked up, and saw defendant's Pontiac and an Oldsmobile in the southbound lanes. The Pontiac was crossing the center line into the northbound lanes headed southeast, and could have been skidding. He could not see the center line because of the snow, but stated that from what he could make out, the left front fender and part of the hood and front end of defendant's automobile were across the center line when

he first looked up. A Volkswagen in which the deceased was a passenger was proceeding north. The Pontiac was approximately 50 feet from the Volkswagen when it began to cross the road and, although it began to turn back to the right before impact, a head-on collision resulted.

The officer testified that he was approximately 155 to 160 feet from the point where the Pontiac and the Oldsmobile collided. Although he did not see the actual collision, he concluded that the right front fender of the Pontiac struck the left rear fender of the Oldsmobile.

He testified that he was about 150 feet away from the second and fatal collision, and had an unobstructed view of the accident. When he looked up, the Oldsmobile was approximately in the center of the southbound lanes, about 4 feet from the snow bank covering the curb on its right and 4 feet from what appeared to be the center of the road. It was going about 20 to 25 miles per hour in a 35 mile per hour zone. Defendant's auto was going the speed limit or under. The Volkswagen was traveling about 20 miles per hour and was approximately 1 foot from the snow bank to its right. After the accident, Pedrin was able to determine where the center line was by removing the snow on the road and then estimated that the Oldsmobile was 3 to 4 feet or less from the center line when defendant's auto struck it.

Michael Sanford, the driver of the Volkswagen, testified that there were two lanes of traffic going north, and that he was as close to the curb as possible in the furthest righthand lane, with nothing between the curb and his car. He observed the defendant's automobile and the Oldsmobile approaching him at a distance of a couple hundred yards, and could remember nothing further except headlights blinding him.

Joseph Semasko, also a North Chicago Police officer, testified that he arrived on the scene shortly after the accident, and that there was only one lane in each direction open on Sheridan Road that night, with very little room on either side of the lanes. He said that a car could be driven down the center, but it would partially protrude into both the north and southbound lanes.

He said that after the collision the defendant was in pain, faint, not coherent, not belligerent. He and another officer transported defendant from the scene of the accident. In the police car, he smelled alcohol on defendant's breath. He performed no tests for intoxication.

The results of a blood test administered to defendant at the hospital that evening, showed that defendant's blood had an alcoholic content of .21%.[1]

William Johnson, the passenger in defendant's car, was called by the

---

[1] .10 percent or more blood alcohol creates a presumption of "under the influence of intoxicating liquor" under Ill. Rev. Stat. 1969, ch. 95½, sec. 144 (c) 3.

State and testified on cross-examination that he did not smell any alcohol on defendant's breath. There was also testimony from a defense witness that she was with the defendant during the evening hours immediately prior to the accident and neither saw the defendant take any intoxicating liquor that evening nor smelled alcohol on his breath. She stated the defendant was not intoxicated at 10:00 P.M. when she last saw him.

Defendant testified that he had had no intoxicating liquors that day. He stated that two northbound and two southbound lanes were open for travel and that he was in the east lane proceeding south. He stopped for a light at Sheridan and 12th and saw another car stop to his right. The two cars left the light at approximately the same time, with defendant going 20 to 25 miles per hour. He neither accelerated nor applied his brakes, but his car skidded into the automobile on his right, then went out of control and skidded sideways into the northbound lanes of traffic. He did not apply his brakes as he skidded because he thought this would make it more difficult to stop. By the time he regained control and again got the car facing south, he collided with a Volkswagen proceeding north. After the accident, he assisted his passenger from the car. He then got into the squad car, and remembers nothing else until waking up in a hospital. On cross-examination, defendant stated that he could not say how far he was from the center of the road prior to hitting the car on his right, but knew he was in the proper lane because of other traffic. He could not say whether the curb was covered with snow or not, and did not know how far the car on his right was from the curb.

Patrick Quilty, a private investigator, testified for the defense that he measured Sheridan Road between 12th and 13th Street, at the time of trial and found it to be 44 feet wide. He also measured four or five standard size automobiles, including Chevrolets, Pontiacs, and Fords. The smallest was 6'2" wide, the largest 6'6" and the average width was 6'4". He did not measure the specific cars involved in the accident.

■■ The State argues that the allegation in the indictment that defendant struck the Volkswagen while intoxicated, and "while improperly overtaking another vehicle on the left   *   *   *", was proved beyond a reasonable doubt, but in any event was not a material allegation. We cannot agree that the quoted language was immaterial. The particular acts relied upon to sustain a charge of reckless driving are a part of the nature and elements of an offense. They are material allegations which must be proved beyond a reasonable doubt. *People v. Coolidge* (1970), 124 Ill. App.2d 479, 483-484.

However, we find that there is proof beyond a reasonable doubt that defendant was guilty of improperly overtaking the vehicle on his right. Officer Pedrin testified that three lanes of the highway were open and

that there were only 3 or 4 feet between the Oldsmobile and the center line. Officer Semasko concluded that there was not enough room in either the northbound or southbound lanes for two cars. And although Michael Sanford, the driver of the Volkswagen, stated that there were two northbound lanes, he said that he was in the furthest right-hand lane with nothing between his car and the curb. When this evidence is coupled with physical facts, the obviously dangerous weather condition, and defendant's inability to sufficiently control the car as to prevent it from striking the car on his right, it establishes beyond a reasonable doubt an improper overtaking under the language of the indictment.

■■■ The fact that defendant was guilty of improperly overtaking the car on his right does not by itself establish that his conduct was reckless, however. The Statute defines recklessness as a conscious disregard of "a substantial and unjustifiable risk that circumstances exist or that a result will follow, * * *; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation * * *." (Ill. Rev. Stat. 1969, ch. 38, sec. 4—6.) Not every violation of a statute constitutes criminal negligence. *People v. Lynn* (1943), 385 Ill. 165, 173; *People v. Parr* (1971), 133 Ill.App.2d 82, 272 N.E.2d 712, 715.

Defendant's overt acts of driving, considered alone, could leave a reasonable doubt that he acted recklessly within the criminal statute. The evidence shows that the center line could not be seen at the time due to the snow. The only testimony of how the accident occurred is that of the defendant, who said he skidded for an unknown reason, hit the Oldsmobile, and then went out of control, crossing the road and hitting the Volkswagen. It is undisputed that he went out of control only after striking the Oldsmobile. He also testified that he did not brake during the skid, because this would have made it more difficult to regain control. Officer Pedrin stated that the defendant was not exceeding the speed limit, and that before the impact, defendant was apparently regaining control and guiding his automobile back in the proper direction.

■■ However, there is merit to the contention of the State that if defendant were under the influence of intoxicating liquors, he acted recklessly in driving as he did in the prevailing weather conditions. We agree that improperly driving a motor vehicle while intoxicated may be reckless conduct which will convert what would otherwise be ordinary negligence into criminal conduct. We must then determine from the record whether the State has proved beyond a reasonable doubt that defendant was intoxicated and whether, if so, the intoxication was the proximate cause of the collision. *People v. Schneider* (1935), 360 Ill. 43, 53; *People v. Jones* (1971), 2 Ill.App.3d 575, 578.

■■ The State made no proof that any overt acts of the defendant showed that he was intoxicated. There was no opinion evidence of intoxication. Apart from the blood test the only testimony which relates to the issue was that of Officer Pedrin who smelled alcohol on the defendant's breath when he placed him in the squad car. Johnson, the passenger in defendant's car, called as a State's witness testified that he smelled no alcohol. Defendant's actions in helping his passenger after the collisions were consistent with his claim of lack of intoxication. The incoherency alluded to by the officers was consistent with the nature of defendant's injuries. The only real evidence of intoxication would have to be found in the statutory presumption accorded to the results of the blood alcohol test. (Ill. Rev. Stat. 1969, ch. 95½ sec. 144 (c) (3).) However, the blood was taken by a doctor in the emergency room at the hospital at a time when defendant was unconscious from a concussion received in the accident so that there was no consent. We have recently held in *People v. Todd* (1972), 7 Ill.App.3d 617, (N.E.2d), that, under section 144 (c) (3), chemical analysis of a driver's blood shall not be admitted unless the driver has consented to such analysis. While *Todd* did not deal with an unconscious defendant, we hold the consent requirement applicable to this situation,[2] notwithstanding the language of section 144 (e).[3] Therefore this evidence was not properly admitted, and constituted prejudicial error.

Finding that defendant is entitled to a new trial, we need not discuss his challenge to the array. The judgments are reversed and the cause remanded for a new trial.

Reversed and remanded.

T. MORAN and GUILD, JJ., concur.

---

[2] While this holding, in effect exempts all unconscious persons from taking blood tests, we find this the more desirable result, since a contrary finding would subject unconscious persons to unconsented blood tests, when consent must be obtained from all others. We cannot attribute this intent to the legislature, especially in light of the new Illinois Implied Consent Statute, which specifically provides: "Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed to have withdrawn the consent provided by this Section." (Supplement to Ill. Rev. Stat. 1971, ch. 95½, sec. 11—501.1 (e).

[3] Subsection (e) provides, in essence, that when unconscious persons, or persons otherwise incapable of refusal, are given a blood test at the request of a police officer under Section 47.1 of the Act, only certain qualified persons may withdraw the blood. Section 47.1 was an implied consent provision not passed by the legislature.