THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS HAWN, Defendant-Appellant.

First District (1st Division)   No. 80-1399

Opinion filed August 10, 1981.

Block, Levy & Becker, Chartered, of Chicago (Stephen Levy and Alvin R. Becker, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Peter J. Vilkelis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Thomas Hawn (defendant) was found guilty of

reckless homicide (Ill. Rev. Stat. 1979, ch. 38, par. 9—3(a)). He was placed on probation for 30 months with periods of work release. A previous jury had been unable to agree upon a verdict. Defendant appeals.

In this court, defendant contends the evidence was insufficient to prove guilt beyond a reasonable doubt; the trial court erroneously permitted evidence of defendant's consumption of alcoholic beverages without proof of intoxication; the closing argument of the State was improper and prejudicial and the trial judge erred in instructing the jury. Under the view we take, the first contention is dispositive and the remaining points need not be considered.

A full factual statement is required. After study of the record, we are convinced that a proper statement of the pertinent facts, in correct chronological order, is best commenced with a summary of defendant's testimony.

Defendant testified that on April 13, 1979, he spent 1½ to 2 hours in the evening playing pool with James Vanek. Defendant stated he drank three 12-ounce bottles of beer over this period. Shortly before 9 o'clock they entered defendant's car, a 1973 Oldsmobile. Defendant was driving to the home of a friend who lived in the area of 119th Street and Ridgeway Avenue. Defendant had known Vanek for some 5 years. Defendant was 22 years old.

The defendant drove in a northerly direction on Kedzie Avenue. He stopped for a traffic light at 119th Street, a two-lane road. When the light changed, defendant made a left turn and drove west on 119th Street. Driving west on 119th Street there is a hill or incline. In fact, 119th Street in that area was described as "hilly." The grade goes up from Kedzie to Central Park, a north-south street. The area is rather poorly lighted with only one street light on every other utility pole. The speed limit there is 35 miles per hour.

The south side of 119th Street borders upon a cemetery. On the north side there is a trailer court west of Kedzie but some distance north of 119th Street. Also on the north side and farther to the west, there is a small industrial shop and some work buildings. No public places in the area were open at that time.

Defendant testified he continued driving west on 119th Street at about 35 miles per hour. A small car traveling east swerved into his lane. The cars collided violently. Defendant's head struck the windshield with force sufficient to cause a cracked windshield. He took his foot up from the accelerator, and his car slowed down. He turned his head and saw this other vehicle continue east through the intersection of 119th and Kedzie. Defendant's car was pulling to the left, and he could feel the front wheel rubbing against the left front fender. He saw that his car had swerved

over into the eastbound or southern portion of 119th Street. He had extreme difficulty in attempting to pull his car back into the westbound lane. He saw headlights coming over the hill from an eastbound car. There was a collision which rendered him unconscious.

Defendant estimated one-half minute passed between these two collisions. He was taken to the hospital where he was treated for a fractured rib and his head was X-rayed. Defendant testified, "I was stunned from the time I got hit first to the time I got into the hospital."

James Vanek, passenger in defendant's car, testified defendant was "driving fine" until the collision with the first car. Vanek was thrown violently forward, struck his head on the dashboard and became unconscious.

It is undisputed that a Pontiac Firebird automobile was then being driven in an easterly direction on 119th Street. The driver was Tony Halper. A young man named Santo Messina, Jr., was in the front passenger seat, and Annette Fabian, a high school student, was in the rear seat. These two automobiles collided with considerable force. As a result, Santo Messina, Jr., the passenger, was mortally injured.

There was considerable police testimony. After receiving a radio call, Officer Hurckes went to the site. He saw wreckage about 50 to 100 feet west of the intersection of Kedzie Avenue and 119th Street. On 119th, about 450 feet east of Central Park the officer observed the Oldsmobile and the Pontiac. The Oldsmobile, defendant's car, was standing across 119th Street facing south. The middle of the car was about over the center line of 119th Street. The Pontiac was found on the north shoulder off of the road. The officer noted "minimum glass debris" in this area. Defendant told Officer Hurckes he was the driver of the car and he had been hurt. Defendant was taken to the hospital. After *Miranda* warnings, defendant told the officer he had four bottles of beer prior to the occurrence. Without objection defendant submitted to a blood test. For reasons not disclosed by the record, the results of the test are unknown.

The officer testified a person named James Lawler had been arrested by the police of Blue Island, an adjacent suburb. The officer spoke to Lawler who was in the hospital. The officer issued traffic citations to Lawler. The officer also testified he noted in his report that the headlights on defendant's car had been damaged by a collision with Lawler's car.

Officer Troglia had experience in accident reconstruction some 50 or 60 times. He found scrape marks on the roadway. He found evidence of an automobile collision in the north or eastbound lane of 119th Street, some 441 feet east of Central Park.

Michael Davis testified he was driving east on 119th Street toward Kedzie, with three friends. A westbound car approached and crossed over into the southern or eastbound lane. This car had front-end damage

and no lights. Davis flashed his lights and then swerved onto the south shoulder to avoid a collision. Davis testified he estimated the speed of the oncoming car at 45 to 50 miles an hour. After the occurrence Davis told the police he could not estimate the speed of the other car but it was "excessive." Thereafter Davis observed this other car in the middle of the road and another car in a ditch.

Larry Williams, a passenger in the Davis car, testified he saw another car going west without lights. This other vehicle moved "gradually" into the eastbound lane. This other vehicle had "damage to the front end of it." It was travelling "approximately forty to fifty miles an hour." Williams testified Davis swerved their car to the shoulder of the road. Williams turned and saw this other car, an Oldsmobile, collide with a Pontiac Firebird. After this collision, Williams saw the defendant "walking around just talking incoherently." At his suggestion, defendant "laid down on the ground."

Steven Daly testified he was driving eastbound on 119th Street. He saw a car without lights which swerved from the westbound to the eastbound lane. The car ahead of him pulled over to the shoulder of the road. In his opinion, this oncoming car was driving from 45 to 50 miles per hour. He described this car as "all tangled up." He said, "* * * it looked like it had just been in an accident." He saw this car collide with a Pontiac Firebird which was proceeding to the east.

Officer Hardy from the Blue Island Police Department testified for defendant. The officer had received a radio call concerning a hit-and-run accident in the area of 119th Street and Kedzie. Some 12 blocks southeast thereof, the officer came across an automobile which was heavily damaged on the front end and apparently immobilized. This car was driven by James Lawler. Lawler was bleeding and "smelled strongly of alcohol." He was taken to the hospital.

Defendant also produced evidence that competent technicians examined a blood sample taken from James Lawler. One of them testified the blood contained 326 milligrams of alcohol per deciliter. An expert toxicologist testified the driving ability of a person whose blood contains this alcoholic content would be severely impaired.

The pertinent statute on reckless homicide (Ill. Rev. Stat. 1979, ch. 38, par. 9—3(a)) provides:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide."

The Criminal Code of 1961 defines "reckless" (Ill. Rev. Stat. 1979, ch. 38, par. 4—6):

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

■■ As the State aptly points out, recklessness, a mental state, is to be inferred from all the facts and circumstances in the record and whether any given conduct is reckless is a question for the jury to decide. (*People v. Zahner* (1979), 77 Ill. App. 3d 706, 707-08, 396 N.E.2d 593.) The State also urges the accepted proposition that this court should not set aside the verdict of the jury unless the evidence is so improbable or palpably contrary to the verdict as to create a reasonable doubt of guilt. *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.

However, as defendant contends, a conviction for reckless homicide cannot be sustained upon proof of negligence alone. It is necessary, as shown in the above statutory definition, for the defendant consciously to disregard a substantial and unjustifiable risk so that there is a gross deviation from the standard of care which a reasonable person would exercise. *People v. Griffith* (1978), 56 Ill. App. 3d 747, 751, 372 N.E.2d 404.

■■ In *People v. Frary* (1976), 36 Ill. App. 3d 111, 114, 343 N.E.2d 233, *appeal denied* (1976), 63 Ill. 2d 559, citing *People v. Crego* (1946), 395 Ill. 451, 70 N.E.2d 578, the court held:

"Before a guilty verdict of involuntary manslaughter in operating an automobile can be allowed to stand, it must appear from the record that the defendant knew of the danger of collision and recklessly, or wantonly collided with the decedent without using those means reasonable and at his command to prevent the accident."

Applying these principles to the facts before us, it appears defendant was driving his car in a safe and careful manner until the point of the collision between defendant and Lawler. The testimony that defendant operated his car along 119th Street at a speed above the limit "does not constitute criminal negligence or willful and wanton misconduct in the absence of aggravating factors." (*Frary*, 36 Ill. App 3d 111, 114.) In addition, defendant denied this testimony and testified he was driving within the speed limit.

■■ There is no evidence in this record that defendant was intoxicated to

any degree or to any extent. The definitive evidence upon this matter, the blood test result, was apparently within the exclusive control of the State. Because these results were not offered in evidence "an unfavorable evidentiary presumption arises" against the State. *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 744, 390 N.E.2d 97, *appeal denied* (1979), 79 Ill. 2d 611.

■■ The collision between the cars driven by defendant and Lawler and the damage to the front of defendant's car is proved in this record beyond reasonable doubt. It is established by defendant's own testimony, by witnesses Davis and Williams, by police testimony regarding the presence of automobile wreckage immediately west of Kedzie Avenue, far east of the site of the second and fatal collision, and by the arrest of Lawler asleep in his damaged car in Blue Island after the police there had received notice of the accident.

From the point after the initial collision between defendant and Lawler, defendant's testimony is hardly contradicted. There can be no doubt that defendant's head came into forcible contact with and cracked the windshield of his car and that defendant's car was severely damaged. Either one or both of defendant's lights were rendered inoperative and the steering of his vehicle was rendered at least extremely difficult by the contact between the left-front wheel and the fender.

Defendant's testimony that he turned and saw the Lawler car continue to the east and disappear and his own efforts to move his disabled vehicle out of the path of the oncoming Pontiac automobile are uncontradicted. Defendant's statement that he attempted to continue in a westerly direction after the collision is entirely plausible. The most expeditious manner in which defendant could report the collision to the police would be to continue on to the home of his friend, which was only two blocks away. There was no telephone or other method of communication in the immediate vicinity on 119th Street.

The State urges that defendant testified he accelerated his car immediately after the collision with the Lawler vehicle. That statement is literally correct. But, it disregards the additional uncontradicted testimony by defendant and the unavoidable inference that a person in defendant's situation would necessarily accelerate from a speed of 20 miles per hour, to which his car had slowed, in a natural effort to remove his car to the right-hand lane to avoid collision with the eastbound Pontiac.

■■ Finally, as a matter of law, the testimony of defendant and many strong circumstances raise forcefully the fact that he was not guilty of willful or reckless misconduct. Actually, as shown, the only possible evidence even tending in that direction is the insufficient testimony that other persons estimated defendant's speed to have been over the speed

limit. Under circumstances such as these where this most unfortunate occurrence may be "attributable to either innocent or criminal cause, the innocent hypothesis will be adopted." *People v. Potter* (1955), 5 Ill. 2d 365, 372, 125 N.E.2d 510.

An examination of the entire record convinces us that there are reasonable and even grave doubts concerning the guilt of this defendant as charged. The judgment appealed from is accordingly reversed.

Judgment reversed.

CAMPBELL, P. J., and O'CONNOR, J., concur.