THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY ZATOR, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2970

Opinion filed January 23, 1991.

Robert L. Rascia, of DeJohn & Associates, and Robert A. Novelle and Phillip M. Angelini, both of Serpico, Novelle, Dvorak, Navigato, Ltd., both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Edward J. Maloney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

After a jury trial, the defendant, Jeffrey Zator, was convicted of driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501) and reckless homicide (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)) for the death of Thomas Dunn, a pedestrian. He was acquitted of driving under the influence of alcohol resulting in great bodily harm (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(f)) to Scott Cordell, one of the passengers in his car. On appeal, the defendant asserts that (1) the trial court erred in denying his motion *in limine* to exclude the results of the breathalyzer test, which was not administered in accordance with the Illinois Department of Public Health Standards and Procedures; (2) the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt for the offense of reckless homicide; and (3) the trial court erred in failing to exclude the breathalyzer test result evidence, which was not probative of his blood-alcohol concentration at the time of the incident.

On May 7, 1986, at 1:40 a.m., the defendant was driving west on 111th Street in Oak Lawn when his car collided with a pedestrian. Earlier in the evening, the defendant had been socializing with two friends, Scott Cordell and Darryl English. English testified that

around 6:45 p.m., the three ate a cheeseburger dinner. Then, the defendant left to go to work and returned around 9:45 p.m. Cordell and English had been drinking, but the defendant had not yet had anything of an alcoholic nature to drink. English further testified that the three men went to a bar, arriving at 10:30 p.m. The three were drinking pitchers of beer, but the defendant drank less than the other two. The three men left that bar at 12:30 a.m. Outside the bar, Cordell started to jump up and down, scream, make remarks to people in cars and passers by, and generally act wild. The defendant drove to another bar with his two friends. Cordell was still acting up, so they stayed for only one beer and left around 1:30 a.m. The defendant was driving, with Cordell in the front seat and English in the back seat.

Darryl English further testified that, in the car, Cordell was still yelling, dancing around, singing, and sticking his head out the sunroof. When the defendant stopped at a red light at 111th Street and Cicero Avenue, Cordell stuck his head out the sunroof and began yelling. After the defendant's car left the stoplight, Cordell sat back down in the passenger seat, but then started climbing out the passenger window. His head and chest were out the window, and he was sitting on the door facing the driver's side. English yelled at him to get back in the car, and the defendant reached to pull him back. All of a sudden, English heard a noise and Cordell vanished from the car. English had not seen a pedestrian on the roadway. He was of the opinion that the defendant had no problem operating the car and was not under the influence of alcohol at the time. In addition, two defense witnesses testified that they spoke with the defendant during the two hours he was at the bar. It was the opinion of both witnesses that the defendant was not under the influence of alcohol.

The defendant's testimony was substantially the same as English's. In addition, he testified that at the first bar, he drank three or four glasses of beer and ate two slices of pizza. At the second bar, he drank one beer. After leaving the intersection of 111th Street and Cicero Avenue, the defendant heard English scream "get back in." The defendant turned to his right and saw Cordell hanging out the passenger window. The defendant reached for him, heard a bang, and Cordell was gone. The defendant crossed the railroad tracks, turned around, and returned to the scene of the accident. He had not previously seen a pedestrian on the roadway. When the police arrived at the scene, the defendant told them that he did not know what happened and that he had been drinking. The officer then asked him to blow into his face, which the defendant did. The defendant was placed under arrest, handcuffed, and transported to the police station.

There were three other witnesses to the accident. Two of the witnesses were in a car next to the defendant's at the stoplight. The other witness was driving the car behind the first witness' car. Although their testimonies differed somewhat as to the exact events leading up to the accident, they all testified that a passenger in the defendant's car was hanging out the car's sunroof while at the stoplight. After the defendant left the intersection and proceeded west, his car veered off the road at least once while the passenger was still hanging out of the car. They saw two bodies fly up into the air and land in the street. The defendant's car continued west, crossed the railroad tracks, then returned to the scene. None of these witnesses observed the defendant's condition at the time. They estimated the speed of the defendant's car from 45 to 60 miles per hour where the speed limit was 40 miles per hour. All the witnesses were 1½ to two blocks behind the defendant's car at the time of the impact.

Officer Michael Osness, who was in charge of the accident scene, testified that he approached the defendant at the scene. He observed that the defendant had bloodshot and glassy eyes, had an odor of alcohol on his breath, and was disoriented and confused. His opinion was that the defendant was under the influence of alcohol at that time. The officer also testified that an examination of the car revealed that all the damage was to the right side of the car, with no damage to the front. In addition, the windshield was broken and dented in. The officer then went to the hospital to check on the condition of the two victims and arrived at the police station at approximately 3 a.m. He observed the defendant from 3:05 to 3:40 a.m., during which time the defendant did not eat, belch, vomit, or take anything orally. The defendant was brought into an interview room at 3 a.m. and given his implied consent warnings at approximately 3:30 a.m. At 3:40 a.m., the defendant took a breathalyzer test, which registered a blood-alcohol concentration of .14. The defendant then adequately performed the balance, walk-and-turn, and finger-to-the-nose sobriety tests.

Officer Kerrigan, the evidence technician on duty that night, testified that he observed the defendant in the paddy wagon at the scene. He noticed an odor of alcohol on the breath of the defendant, who appeared to be confused. Kerrigan prepared the breathalyzer machine at approximately 3:05 a.m. and observed the defendant from 3:15 until 3:40 a.m., when the test was administered. During those 25 minutes, the defendant took nothing orally. The police officer also testified that when asked what he ate, the defendant said he ate some Dorito chips at 6:30 p.m.

The defendant testified that he had no difficulty completing the sobriety tests satisfactorily and submitted to a breath test. He further testified that the four or five beers he drank during the evening did not affect him at all. He did not think he was under the influence of alcohol that night.

An expert witness, Dr. Thomas O'Donnell, a pharmacist, testified that there were a number of factors that could affect the accuracy of the breathalyzer test. The breathalyzer machine measures the amount of alcohol in a person's lungs and multiplies it by a factor to determine the amount of alcohol in the blood. The 1 to 2100 ratio used assumes that every individual's breath has a blood ratio of 1 to 2100 even though that figure can vary from 1 to 1100 up to 1 to 3300. Dr. O'Donnell also testified about how alcohol is ingested into the system, absorbed by the system, and then burned off by the system. Factors that can accelerate or retard the absorption of alcohol into the system are the weight of the person, what and when he drank, and what and when he last ate. The witness' opinion was that a breathalyzer test would not accurately reflect the defendant's condition two hours earlier. Assuming that the defendant had four or five beers in 2½ hours and that he ate pizza and a cheeseburger during the evening, Dr. O'Donnell estimated that the defendant's blood-alcohol content at 1:40 a.m. would have been between .05 and .06.

The defendant's motion *in limine* to exclude the breathalyzer test was denied. After the trial, a jury convicted him of driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501) and reckless homicide (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)) in the death of the pedestrian, but acquitted him of driving under the influence causing great bodily harm (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(f)) in the death of the passenger, Scott Cordell. He was sentenced to 18 months' intensive probation and fined $500.

The defendant asserts that the trial court erred in denying his motion *in limine* to exclude the results of the breathalyzer test since it was not administered in accordance with the Illinois Department of Public Health (IDPH) Standards and Procedures. In order to present evidence of the breathalyzer test results at trial, Illinois statute requires compliance with the IDPH regulations. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(1).) Those standards, in pertinent part, are as follows:

> "(a) Continuous observation of the subject for at least twenty (20) minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food,

drink, regurgitated, vomited or smoked." (77 Ill. Adm. Code §510.60 (1985).)

Compliance with these standards is mandatory, and the admissibility of breathalyzer tests will be denied for failure to comply. *People v. Hamilton* (1987), 118 Ill. 2d 153, 160.

The defendant relies on *People v. Haney* (1987), 155 Ill. App. 3d 44, 46, 507 N.E.2d 230, to show that noncompliance with the 20-minute period results in the inadmissibility of the breathalyzer results. That case, however, is distinguishable. The defendant in *Haney* was chewing tobacco and drank some water 17 minutes before the test was administered. Here, both police officers testified that they observed the defendant for more than the required 20 minutes prior to the test. During that time, the defendant did not smoke, drink, eat, belch, or vomit.

The State cited cases that satisfied IDPH regulations even though one officer did not stare at the defendant for 20 minutes. In *In re Summary Suspension of Driver's License of Ramos* (1987), 155 Ill. App. 3d 374, 508 N.E.2d 484, the 20-minute rule was not violated even though the police officer's attention was diverted away from the defendant for six minutes while the officer reset the breathalyzer. In *People v. Neville* (1987), 151 Ill. App. 3d 679, 503 N.E.2d 387, the 20-minute rule was complied with by the aggregate observations of the arresting officer and the testing officer.

The defendant attacks the sufficiency of the State's evidence. He argues that the testimony of both police officers lacked logical consistency while his testimony was clear, concise, and unimpeached as to the time sequence. Both Osness and Kerrigan testified that they returned to the police station shortly after 3 a.m. There was undisputed testimony that the implied consent and *Miranda* warnings were given to the defendant at 3:30 a.m. and the breathalyzer test at 3:40 a.m. The conflict concerns the sequence of events between 3:05 and 3:30 a.m. Officer Osness testified that he was preparing reports in the interview room with the defendant from about 3:05 until 3:40 a.m. He also testified that the defendant was brought out of the interview room at 3 a.m. and was given the admonishments at 3:30 a.m. Officer Kerrigan testified that after he prepared the machine around 3:10 a.m., he observed the defendant from 3:15 until 3:40 a.m.

The defendant contends that it was illogical for Officer Kerrigan to prepare the machine before knowing whether the defendant would consent to take the test. He also argues that it was illogical for Officer Osness to interview him before giving admonishments. The defendant contends that those conflicts in the testimony raise the

question of the officers' credibility. The defendant testified that he was brought into the interview room at 3:30 a.m. and immediately admonished.

■■ ■ Where testimonial evidence is conflicting, it is within the province of the trier of fact to determine credibility. (*People v. Jacquith* (1984), 129 Ill. App. 3d 107, 113, 472 N.E.2d 107.) The finding should not be disturbed on review unless such findings are palpably against the manifest weight of the evidence. (*Jacquith*, 129 Ill. App. 3d at 113, 472 N.E.2d 107.) The trial court judge's finding that the 20-minute period was observed was not against the manifest weight of the evidence. Therefore, it was properly admitted and the motion *in limine* was properly denied.

Since the IDPH regulations do not have to be followed in reckless homicide cases (*People v. Murphy* (1985), 108 Ill. 2d 228, 236), the defendant's argument only applies to the charge of driving under the influence. The defendant attempts to distinguish *Murphy*, stating that the inadmissibility was due to the blood analyst not being certified, not to the procedure used to draw the sample or its analysis. Our supreme court held in *Murphy*, however, that the IDPH section 11—501.2 standards are not mandatory in reckless homicide prosecutions. The court stated:

> "We hold that the Standards are applicable only to the offense of driving under the influence, and that the test results should have been received in evidence under the usual standards governing the admission of evidence." *Murphy*, 108 Ill. 2d at 236.

■■ The defendant next asserts that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt for the offense of reckless homicide. A person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which caused the death are performed recklessly so as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) Reckless conduct occurs when an individual consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. (*People v. McDermott* (1985), 141 Ill. App. 3d 996, 1006, 490 N.E.2d 1293.) The mental state of recklessness is to be inferred from all of the facts and circumstances in the record. *People v. Gittings* (1985), 136 Ill. App. 3d 655, 659, 483 N.E.2d 553.

While excessive speed alone may be insufficient to sustain a conviction for reckless homicide, speed combined with other circumstances which indicate a conscious disregard such that a reasonable person would act differently under the same situation is enough to establish reckless homicide. (*People v. Mikyska* (1989), 179 Ill. App. 3d 795, 801, 534 N.E.2d 1348.) Among other things, conscious disregard of a substantial or unjustifiable risk may be shown through the physical condition of the driver, including evidence of a driver's intoxication. (*People v. Sleboda* (1988), 166 Ill. App. 3d 42, 55, 519 N.E.2d 512.) Improperly driving an automobile while intoxicated may constitute reckless conduct. *Sleboda*, 166 Ill. App. 3d at 55.

The defendant contends that the State must prove willful and wanton behavior. Although some courts have used the phrase "willful and wanton" conduct as a standard for reckless homicide, *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 849-50, 449 N.E.2d 980, clarified that the definition of recklessness does not require the State to prove willful and wanton conduct in order to prove recklessness. The court noted that the Criminal Code of 1961 did not use the term "willful and wanton" in defining recklessness, and the courts that used the term were using the phrase interchangeably with the term "reckless." *Wolfe*, 114 Ill. App. 3d at 848-50.

The defendant relies on cases where there was no reckless homicide. All the cases, however, are distinguishable. In *People v. Walljasper* (1981), 97 Ill. App. 3d 81, 422 N.E.2d 251, the road was icy and the defendant's car went into a skid. The defendant successfully avoided one collision, but slid into a parked car. The only evidence of the defendant's intoxication was from a physician who treated the defendant in the hospital for injuries. The bases for the doctor's opinion were an odor of alcohol and slow verbal responses, which he said could have been caused by the injury. (*Walljasper*, 97 Ill. App. 3d at 84.) In *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 432 N.E.2d 672, the defendant was not driving at a high rate of speed, nor was there sufficient evidence that he was intoxicated. While there was a strong odor of alcohol, he passed the balancing tests, and there were no blood-alcohol test results in evidence.

The only evidence of intoxication in *People v. Chambers* (1972), 8 Ill. App. 3d 430, 435, 289 N.E.2d 476, *aff'd sub nom. People v. Todd* (1975), 59 Ill. 2d 534, was an alcoholic odor on the defendant's breath. The blood-alcohol test results were inadmissible, and the incoherency alluded to by the officers was consistent with the defendant's injuries, which caused him to be unconscious. The defendant, who was not speeding, skidded on a snowy road. The court in *People v. Frary*

(1976), 36 Ill. App. 3d 111, 114, 343 N.E.2d 233, stated that failure to maintain a safe interval behind a vehicle and speeding were not enough to sustain a reckless homicide conviction. The only evidence of intoxication was that the defendant stated that he had had some drinks.

The only evidence of recklessness in *People v. Potter* (1955), 5 Ill. 2d 365, was conflicting testimony whether or not the bus driver was speeding. Similarly, there was insufficient evidence in *People v. Hawn* (1981), 99 Ill. App. 3d 334, 425 N.E.2d 1024, to prove reckless homicide. The defendant, who was not speeding, lost control of his car after a collision. He collided with another car head on and lost consciousness. The court concluded that the defendant was driving in a safe manner until the first collision. Additionally, there was little evidence that the driver was intoxicated. Although the defendant had stated that he drank three beers, the results of the blood test were never introduced into evidence, thus creating an unfavorable evidentiary presumption against the State. *Hawn*, 99 Ill. App. 3d at 339.

There was no reckless homicide in *People v. Chiappa* (1977), 53 Ill. App. 3d 639, 368 N.E.2d 925, where a police officer was responding to an emergency call. He was operating his emergency flashers and flashing his headlight highbeams on and off when he came to a stop sign, where he either stopped or slowed down. The victim bicyclist rode into the intersection with no reflectors or lights on the bicycle, and ran into the police officer's car.

The State cites cases that affirm reckless homicide convictions. In *People v. Dunnegan* (1987), 151 Ill. App. 3d 973, 503 N.E.2d 823, the defendant, while intoxicated, was pulling away from the roadside as the victim was running after the defendant's truck. While attempting to enter the truck, the victim fell and slid under the truck. In *People v. Gittings* (1985), 136 Ill. App. 3d 655, 483 N.E.2d 553, the defendant was speeding on a hilly, curvy road in a residential area at night while intoxicated. There was testimony from a former bartender who observed the defendant before he entered his car. He stated that the defendant's speech was slurred and that he stuttered and weaved as he walked. Also, the defendant admitted that he had been drinking.

The court in *People v. McDermott* (1985), 141 Ill. App. 3d 996, 1008, 490 N.E.2d 1293, ruled that the defendant's speeding and crossing over in the oncoming lane, colliding head on with the victim, was sufficient to sustain his reckless homicide conviction. The court affirmed the defendant's reckless homicide conviction in *People v. Moreno* (1983), 116 Ill. App. 3d 1, 452 N.E. 2d 22, because the defendant failed to apply his brakes. At the moment of impact, he

was going well over the 30-miles-per-hour speed limit in the left-hand lane of a residential street where 10 to 12 children were playing.

In *People v. Gruner* (1985), 130 Ill. App. 3d 1042, 474 N.E.2d 1355, there was conflicting evidence about the defendant's intoxication and the location of the collision. The court, however, concluded that the jury was justified in finding the defendant guilty beyond a reasonable doubt because there was ample evidence that the defendant was intoxicated at the time, the collision occurred in the victim's lane of traffic, and the visibility was good even though it was raining.

■ Whether the given conduct is reckless is a question of fact for the jury to decide. (*People v. Reding* (1989), 191 Ill. App. 3d 424, 449, 547 N.E.2d 1310.) It is its function to determine whether the State has met its burden of proving the defendant guilty of the crime charged. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 25, 486 N.E.2d 1347.) Credibility of the witnesses and the weight given their testimony are exclusively within the province of the jury, and any conflicts in the testimony are to be resolved by the jury. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62.) A court of review will not disturb a jury's verdict unless the evidence presented is improbable, impossible, or unsatisfactory as to raise a reasonable doubt of guilt. *Smith*, 139 Ill. App. 3d at 25.

■ In this case, there was sufficient evidence to prove the defendant guilty of reckless homicide beyond a reasonable doubt. His blood-alcohol level was .14, which created an inference of a reckless act. (*People v. Hester* (1989), 131 Ill. 2d 91, 100-01.) An alcohol concentration of .10 or more renders an individual under the influence of alcohol, which is *prima facie* evidence of a reckless act. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—3(b), (c)(1).) In addition, the officer at the scene testified that there was a strong odor of alcohol, and the defendant had glassy and bloodshot eyes. He was confused and disoriented, but there was no evidence of any head injury to the defendant. In addition, there were three eyewitnesses who testified that the defendant was driving over the posted speed limit, ran off the road one to three times, and was driving with a passenger hanging out of the car.

Finally, the defendant asserts that the trial court erred in failing to exclude the breathalyzer test result evidence because the test results were not probative of the defendant's alcohol level at the time of the incident. He maintains that the test results were unreliable because of the two-hour delay in administering the test and his expert's testimony, which estimated the defendant's blood-alcohol level at .05 or .06 at the time of the incident.

■ Illinois law is well settled that any delay between the time of the incident and the breathalyzer test goes to the weight given the results, viewed in light of the totality of the circumstances. (*People v. Kappas* (1983), 120 Ill. App. 3d 123, 129, 458 N.E.2d 140.) Results of tests administered two hours after the incident (*People v. Frantz* (1986), 150 Ill. App. 3d 296, 302, 501 N.E.2d 966; *People v. Borst* (1987), 162 Ill. App. 3d 830, 836, 516 N.E.2d 854), 1½ hours after the incident (*People v. Johnigk* (1982), 111 Ill. App. 3d 941, 944, 444 N.E.2d 739), one hour after driving (*People v. Schuld* (1988), 175 Ill. App. 3d 272, 279, 529 N.E.2d 800), and 38 minutes after driving (*Kappas*, 120 Ill. App. 3d at 128) are all admissible. As to the expert's testimony, the jury can either accept or reject his testimony. *People v. Romano* (1985), 139 Ill. App. 3d 999, 1006, 487 N.E.2d 785.

■ The defendant further argues that the test results viewed in light of the totality of the circumstances did not establish that the defendant was intoxicated at the time of the incident. He argues that the officer's observations of the defendant at the scene were only bloodshot eyes and an alcoholic odor on the his breath. He then analogizes to cases where neither evidence of mere consumption of alcohol by the defendant (*People v. Togher* (1970), 127 Ill. App. 2d 141, 262 N.E.2d 88) nor the smell of alcohol on the defendant (*People v. Thomas* (1975), 34 Ill. App. 3d 578, 580, 340 N.E.2d 174) was enough to prove intoxication. *Thomas* is distinguishable, however, because that defendant received massive head injuries prior to the time he appeared to be disoriented, uncoordinated, and drowsy. The only other evidence of intoxication, the odor of alcohol on the defendant's breath, was not enough to establish intoxication. *Thomas*, 34 Ill. App. 3d at 580.

If we examine the totality of the circumstances in this case, the jury's guilty verdict for driving under the influence is supported by the evidence. The officer's observations at the scene included a strong odor of alcohol, bloodshot and glassy eyes, disorientation, and confusion. There was no evidence of any head injury to the defendant. Additionally, there was testimony from three witnesses that the defendant had veered off the road and was driving above the posted speed limit while a passenger was hanging out of the car. In viewing the breathalyzer test results of .14 in light of the totality of the circumstances, there was enough evidence to support the jury's verdict.

Judgement affirmed.

RIZZI and WHITE, JJ., concur.