NOTICE
Decision filed 08/22/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220544-U

NO. 5-22-0544

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 21-DT-783 |
| | ) | |
| DAVID M. GOLLEY, | ) | Honorable |
| | ) | Veronica L. Armouti, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the denial, by the circuit court of Madison County, of the defendant's request to rescind the statutory summary suspension of his driving privileges, because the evidence before the circuit court, which included witness testimony and videotape evidence, supports the conclusion that the arresting officer in this case strictly complied with the required 20-minute observation period before the defendant was administered a breathalyzer test at the Madison County jail.

¶ 2   The defendant, David M. Golley, appeals the denial, by the circuit court of Madison County, of his request that the circuit court rescind the statutory summary suspension of his driving privileges. For the reasons that follow, we affirm the ruling of the circuit court.

¶ 3                                   I. BACKGROUND

¶ 4   This case commenced in the circuit court of Madison County with the filing, on December 28, 2021, of, *inter alia*, the following documents: (1) an Illinois citation and complaint, which

1

alleged that on December 27, 2021, at approximately 1:43 p.m., the defendant committed the offense of driving under the influence of alcohol, in violation of Illinois law; (2) a law enforcement sworn report authored by Deputy Kyle Graham of the Madison County Sheriff's Office, which detailed the alleged offense, including, *inter alia*, the allegation that the defendant had a .272 alcohol concentration in his blood when tested on scene at 1:51 p.m., and a .236 alcohol concentration in his blood when a subsequent test was administered, and which stated that the defendant had been served with notice of the statutory summary suspension of his driving privileges; (3) an order entered on defendant's appearance in the circuit court, which, *inter alia*, provided for the release of the defendant on a recognizance bond of $10,000, with statutory bond conditions to apply; and (4) a "Warning to Motorist," signed by Deputy Graham on December 27, 2021, at 3:14 p.m., which indicated that the defendant refused to sign the warning.

¶ 5    On January 7, 2022, the defendant entered a written plea of not guilty and requested discovery from the State. Also on that date, the defendant filed a request for a judicial hearing, in which he listed the reasons he sought to have the statutory summary suspension of his driving privileges rescinded. On February 1, 2022, a confirmation of the statutory summary suspension of the defendant's driving privileges by the Illinois Secretary of State was filed.

¶ 6    On April 4, 2022, a hearing was held on the defendant's request that his statutory summary suspension be rescinded. The defendant's trial counsel—who is also the defendant's counsel on appeal—stated to the circuit court that the defendant and the State had stipulated to the admission into evidence of Deputy Graham's police report and of a video of relevance to the hearing. He did not state that the stipulation was for limited purposes only, and did not state any other limitations on how the video could be used by the circuit court once it was admitted into evidence. He moved for admission of the exhibits, which was granted, then provided the circuit court with a copy of the police report. He thereafter called Deputy Graham as his first witness.

2

¶ 7    On direct examination, Deputy Graham agreed that during his police academy training, he was taught how to write police reports, and that he was taught that police reports should be accurate, include all relevant details, and be in chronological order. He testified that he applied those standards when writing his police report in this case. He testified that he had reviewed the report prior to the hearing, and that he stood by it.

¶ 8    With regard to the arrest of the defendant, Deputy Graham testified that on December 27, 2021, he received a report from his dispatcher of reckless driving. He testified that thereafter, while traveling northbound on Godfrey Road, he observed a dark green Corvette that matched the description he had been given driving southbound on Godfrey Road at the intersection with Stamper Lane. He testified that he observed the Corvette making "[a]brupt lane changes" and "weaving in and out of traffic," to the extent that the Corvette was "cutting off other motorists." He testified that he turned around and began to follow the Corvette, ran its registration, and subsequently conducted a traffic stop of the Corvette.

¶ 9    Deputy Graham testified that when he approached the defendant, who was driving the Corvette, the defendant's breath smelled of alcohol, his speech was slurred, and he was "swaying" and had trouble standing. He testified that he did not conduct a field sobriety test because the defendant was swaying so much that Deputy Graham did not believe it was safe to conduct such a test, because the defendant might fall and hurt himself during his attempt to comply with the requirements of the test. He agreed that he observed an open beer can in the defendant's Corvette, and that he offered the defendant the opportunity to take a portable breath test (PBT). He agreed that his report indicated that the PBT result was .272, and agreed that he arrested the defendant at that time. Deputy Graham acknowledged that in his report he noted the defendant's impairment as "slight," which seemed inconsistent with the PBT result, but denied that he could have recorded the PBT result incorrectly, and denied that he could have performed the PBT incorrectly.

¶ 10    Defense counsel next asked to play the video, which was made up of various parts, or chapters. Of relevance to this appeal, before playing the part of the video showing the defendant taking a breathalyzer test at the Madison County jail, defense counsel asked Deputy Graham about his report of that part of the arrest procedure. Deputy Graham agreed that his report stated that at 3:14 p.m., he read to the defendant the "Warning to Motorist," which the defendant refused to sign. He agreed that the report thereafter stated that Deputy Graham "began the 20-minute observation period." He further agreed, as the video was played, that the video showed that at 3:03, he entered the breathalyzer room, where the defendant was seated, and that Deputy Graham was holding paperwork in his hands at that time. He agreed that the video appeared to show that he was still reading the "Warning to Motorist" at 3:07, and that he appeared to finish reading it at approximately 3:10. He agreed that the video appeared to show the defendant refusing to sign the warning at approximately 3:12.

¶ 11    When asked, Deputy Graham testified that he was required by Illinois law to observe the defendant for 20 minutes prior to administering the breathalyzer test. He agreed that 3:12 to 3:32 would be a span of 20 minutes. When asked if the breathalyzer was given at any time before 3:32, that would mean that Deputy Graham had not observed the defendant for the requisite 20 minutes, he testified "Correct." Defense counsel then fast-forwarded the video and pointed out that the test was begun at approximately 3:28, a fact with which Deputy Graham agreed.

¶ 12    On cross-examination by the State, Deputy Graham testified that although he was present for the jail breathalyzer test, another deputy actually administered the test. He again agreed that his report stated that at 3:14, he read to the defendant the "Warning to Motorist" and started his 20-minute observation period. When asked what he was looking for during the 20-minute observation period, Deputy Graham testified, "We're just watching them to make sure that they're not coughing, burping, things like that, because then I'll have to start the test over. So general

4

things like their level of consciousness, how they're acting, things like that." He testified that the defendant did not cough, burp, vomit, or ingest anything. He agreed that he was in the breathalyzer room of the jail with the defendant for approximately 25 minutes, from 3:03 to 3:28, before the defendant "blew" into the breathalyzer. He testified that during that 25-minute period, the defendant did not burp, vomit, or ingest anything, and that he remembered his conversation with the defendant during that time "distinctly." He testified that officers can begin the observation period prior to reading the "Warning to Motorist," or at the same time. He testified that in this case, he began the observation period at the same time he began reading the "Warning to Motorist," which is why he put them in the same paragraph of his report. He testified that he was able to observe the defendant as he read the warning to the defendant. He agreed that the video showed him begin to read the warning at 3:07 or 3:08, which he agreed was "approximately 21 minutes" before the breathalyzer test was administered. He testified that the defendant's jail breathalyzer test result was .236.

¶ 13    On redirect examination, Deputy Graham denied that his police report implied that he did not begin the 20-minute observation period until after the defendant refused to sign the "Warning to Motorist." He testified, "It could all be started at the same time." He agreed that starting the observation period was the last item he mentioned in his report. On recross-examination, he testified that the purpose of his report was to document everything that happened, and agreed that a video would be even better documentation of what happened. He further agreed that the video showed that he observed the defendant for longer than the required 20 minutes.

¶ 14    Following argument by the parties, the circuit court ruled that the defendant had made a *prima facie* case and that the burden now shifted to the State. The State called Deputy Graham back to the witness stand. The State asked Deputy Graham, based upon his training, "is there anything that has to happen in order to start your 20-minute observation period?" He testified,

"No." He further testified that he was not required by any law of which he was aware to wait until he had finished reading the "Warning to Motorist" before he could begin the observation period. Following further argument by the parties, and a recess during which the circuit court reviewed the caselaw provided by the parties, the circuit court issued its ruling sustaining the statutory summary suspension of the defendant's driving privileges. With regard to the 20-minute observation period, the circuit court ruled as follows:

> "Looking at the evidence, the court considered both sides of the argument, but the court finds that with the parties being in the location together for the full period of time and in considering the video and that information *** that substantially the statute was followed as it relates to the 20-minute observation period."

¶ 15   Thereafter, the defendant filed a motion to reconsider the circuit court's decision. The State filed a written response. On May 13, 2022, a hearing was held on the defendant's motion to reconsider and the State's response. No additional testimony was adduced at the hearing, but argument was presented by both parties. On July 25, 2022, the circuit court issued its written order denying the defendant's motion to reconsider. Therein, the circuit court stated that it was "fully advised in the premises, applicable law," and had fully considered "testimony, witness credibility, and available evidence, including video footage." The circuit court found that the video submitted into evidence by stipulation of the parties showed that Deputy Graham entered the jail breathalyzer room at 3:03, and was continuously in the room with the defendant until the breathalyzer was administered at 3:28, a period of 25 minutes. The court further found that Deputy Graham was able to observe the defendant during that entire 25-minute time period, and that "[t]here were no actions observed on the videotape, reported by [the defendant] or reported by either deputy of [the defendant] vomiting, regurgitating, or ingesting foreign objects—actions that would have

6

compromised the breath test results." Accordingly, the circuit court denied the motion to reconsider. This timely appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17     On appeal, the sole issue raised by defense counsel is his contention that Deputy Graham did not comply with the required 20-minute observation period. He argues that the circuit court erred in finding to the contrary, and that the circuit court completely failed to address the discrepancies in Deputy Graham's testimony. Defense counsel argues that Deputy Graham's agreement, on direct examination at the April 4, 2022, hearing, that defense counsel was "[c]orrect" that if the breathalyzer was given at any time before 3:32, that would mean that Deputy Graham had not observed the defendant for the requisite 20 minutes, should trump all other testimony given by Deputy Graham, and should, by itself, mean that the request to rescind should have been granted, because it is clear from the video that the breathalyzer test began at 3:28. In support of this argument, he points out that although Illinois caselaw allows for only "substantial compliance," as opposed to strict compliance, with the 20-minute requirement in terms of the *quality* of the observation (*i.e.*, continuous, uninterrupted observation), it makes no such allowance with regard to the *quantity* of the observation, which means it must be a minimum of 20 minutes, with no exceptions.

¶ 18     We begin our analysis with the observation that it is axiomatic that this court may affirm a ruling of the circuit court on any basis supported by the record. See, *e.g.*, *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007); see also, *e.g.*, *People v. Johnson*, 208 Ill. 2d 118, 134 (2003). We may do so because the question before us on appeal is the correctness of the result reached by the circuit court, rather than the correctness of the reasoning upon which that result was reached. See, *e.g.*, *Johnson*, 208 Ill. 2d at 128.

7

¶ 19    We turn now to the law applicable to the narrow and specific issue raised by defense counsel on appeal. "A hearing on a petition to rescind a summary suspension of driving privileges is a civil proceeding." *People v. Cielak*, 2016 IL App (2d) 150944, ¶ 6. Courts of review apply the same bifurcated standard of review as on a motion to suppress in a criminal case. *Id.* In other words, a reviewing court will defer to the factual findings of the circuit court unless those findings are against the manifest weight of the evidence, and will review *de novo* the circuit court's ultimate determination of whether to grant or deny the petition to rescind. *Id.* A factual finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Id.* ¶ 7. If conflicting testimony is presented to the circuit court, it is within the province of the circuit court to determine credibility, which means that the circuit court "is charged with evaluating how any inconsistencies in a witness's testimony affect the credibility of the whole testimony." *Id.* ¶ 10. We will not disturb such credibility determinations by the circuit court unless those determinations " 'are palpably against the manifest weight of the evidence.' " *Id.* (quoting *People v. Zator*, 209 Ill. App. 3d 322, 328 (1991)). Moreover, it is well established that "a court may accept part of a witness's testimony without accepting all of it." *Id.* ¶ 12. We note as well that, as a legal matter, the *Cielak* court rejected the argument that an officer must read the warning to motorist prior to beginning the 20-minute observation period, as such an argument is not consistent with the plain language of the regulation in question, which contains no such requirement. *Id.* ¶ 17. The *Cielak* court also rejected, as unsupported by any legal authority, the argument that an officer must document when the 20-minute observation period begins. *Id.* ¶ 18.

¶ 20    Although *Cielak* differs from this case factually, that does not negate the foregoing principles, the majority of which are well established in scores of other cases. In this case, as described above, following the April 4, 2022, hearing, the circuit court specifically ruled, with regard to the 20-minute observation period, as follows:

8

"*Looking at the evidence, the court considered both sides of the argument*, but the court finds that with the parties being in the location together for the full period of time and in considering the video and that information \*\*\* that substantially the statute was followed as it relates to the 20-minute observation period." (Emphasis added.)

Thus, the circuit court made it clear that it had looked at the evidence presented to it, and had considered the arguments presented by both parties, which of course included defense counsel's argument that the only part of Deputy Graham's testimony that should have been credited was his agreement with counsel that counsel was "[c]orrect" that if the breathalyzer was given at any time before 3:32, that would mean that Deputy Graham had not observed the defendant for the requisite 20 minutes. Moreover, in its July 25, 2022, written order—which followed the May 13, 2022, hearing on the defendant's motion to reconsider—the circuit court specifically stated that it was "fully advised in the premises, applicable law," and had fully considered "*testimony, witness credibility, and available evidence, including video footage.*" (Emphasis added.) Taken together, the two orders of the circuit court make it clear that the circuit court knew that there were inconsistencies in Deputy Graham's testimony, that the circuit court was making credibility determinations with regard to those inconsistencies, and that it was considering whether the video footage supported or contradicted part or all of Deputy Graham's testimony.

¶ 21    A reasonable trier of fact in possession of the evidence presented to the circuit court—including the video footage—could have found that, notwithstanding some inconsistencies in his testimony, Deputy Graham testified credibly, and with the corroboration of video evidence, that (1) he was in the breathalyzer room of the jail with the defendant for approximately 25 minutes, from 3:03 to 3:28, before the defendant "blew" into the breathalyzer; (2) during that 25-minute period, the defendant did not burp, vomit, or ingest anything; (3) he remembered his conversation with the defendant during that time "distinctly"; (4) officers can begin the observation period prior

to reading the "Warning to Motorist," or at the same time; (5) in this case, he began the observation period at the same time he began reading the "Warning to Motorist," which is why he put them in the same paragraph of his report; (6) he was able to observe the defendant as he read the warning to the defendant; (7) the video showed him begin to read the warning at 3:07 or 3:08, which he agreed was "approximately 21 minutes" before the breathalyzer test was administered; (8) his report was not intended to imply that he did not begin the 20-minute observation period until after the defendant refused to sign the "Warning to Motorist," because, to the contrary, "it could all be started at the same time"; and (9) the video showed that he observed the defendant for longer than the required 20 minutes.

¶ 22      Because the opposite conclusion to a finding that Deputy Graham testified credibly with regard to the foregoing is not clearly evident, such a finding would not be against the manifest weight of the evidence, and supports the circuit court's ultimate determination that Deputy Graham complied with the 20-minute observation period. See, *e.g.*, *Cielak*, 2016 IL App (2d) 150944, *¶¶* 6-12. In fact, such a finding supports strict, rather than substantial, compliance with both the *quality* and the *quantity* of the 20-minute observation period requirement, as it contains within it facts demonstrating the *continuous* observation of the defendant by Deputy Graham for *more than* the required 20 minutes. Accordingly, we find the circuit court did not err in its ruling denying the defendant's request to rescind the statutory summary suspension of his driving privileges. In light of our conclusion, we need not address the State's alternative argument for affirming the circuit court, which is that this court should base its decision entirely on the video evidence, and on that basis alone should find compliance with the 20-minute observation period, because the video "provides more than 20 minutes of footage prior to [the] defendant's breath test," during which it is clear from the footage that the "defendant did not commit a disqualifying act to render the test result unreliable at any relevant time period in which [Deputy] Graham was allegedly not

observing him." Although it is true that the parties stipulated to the admission into evidence of the video, that they placed no limitations on how the video could be used once it was admitted, and that it was defense counsel—presumably because he needed to use the video to prove the exact time at which the breathalyzer test began—who actually offered the video into evidence as part of his case-in-chief at the April 4, 2022, hearing (see, *e.g.*, *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (under doctrine of invited error, party "may not request to proceed in one manner and then later contend on appeal that the course of action was in error")), we nevertheless decline to address the State's alternative argument, as it is not necessary to our disposition of this appeal and therefore any resolution of the alternative argument raised by the State would be advisory in nature. See, *e.g.*, *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (in general, Illinois courts of review decline to decide moot questions, render advisory opinions, or consider issues raised by the parties where the result of the case will not be affected regardless of how the court decided those issues).

¶ 23                                 III. CONCLUSION

¶ 24    For the foregoing reasons, we affirm the order of the circuit court of Madison County that denied the defendant's request that the circuit court rescind the statutory summary suspension of his driving privileges.

¶ 25    Affirmed.